For the reasons above stated, the judgment of the District Court is affirmed.

---

**STATE OF OHIO, ex rel. SENEY, Pros. Atty., v. SWIFT & CO. et al.**

(Circuit Court of Appeals, Sixth Circuit. January 17, 1921.)

No. 3347.

**1. Removal of causes ⬤=19(1)—Defenses under United States laws do not authorize removal.**

A suit in the state court to enforce a penalty and for an injunction and receiver, as authorized by state statute, is not removable under Judicial Code, § 28 (Comp. St. § 1010), though the only controlling or disputed question is whether the state statute violates the United States Constitution or the Interstate Commerce Act, since the entry of a federal question by way of defense does not justify removal.

**2. Removal of causes ☞86(1)—Petition held not sufficient to allege denial of civil rights.**

An allegation in a petition for removal of a cause in the United States court that certain courts of the state have construed the statutes and laws of the state so as to permit the taking of petitioner's property without due process of law, whereby petitioner is unable to enforce its rights under the laws of the United States, comes far short of the full and exact statement of deprivation of civil rights necessary to a petition for removal under Judicial Code, § 31 (Comp. St. § 1013), if that section has any relation to such a controversy.

**3. Removal of causes ☞41—Suit by state cannot be removed.**

A suit in the state court, brought by the state, cannot be removed to the United States court because of diverse citizenship.

**4. Removal of causes ☞47—Title does not determine parties.**

The title which is prefixed to the original petition in a suit does not determine who are the parties to the suit, so as to settle the right to remove it to the United States court for diverse citizenship.

**5. Removal of causes ☞41—Citizen, suing on behalf of state, is the party.**

A citizen, who brings suit on behalf of the state, is, like any other person suing on behalf of others, the party to the suit, for the purpose of determining the right of removal to a United States court.

**6. Removal of causes ☞89(2)—Record may be referred to, if petition is incomplete.**

The right to remove on the ground of diverse citizenship is usually to be determined by the removal petition, but the record may be referred to, to supplement the petition, where that is incomplete.

**7. Evidence ☞43(4)—United States court must take judicial notice of relevant state decisions.**

Whenever a decision of the state court becomes relevant in any aspect of a suit in a United States court, the latter must take judicial notice of the state decisions, just as if they were fully pleaded in the record.

**8. Monopolies ☞24(2)—Prosecuting attorney authorized to institute suit under state sovereign power for violation of Anti-Trust Act.**

Under the Valentine Anti-Trust Act (Gen. Code Ohio, §§ 6390–6402), as construed by the Supreme Court of Ohio, the prosecuting attorney of a county is authorized to bring a suit for violations of that act on behalf of the state, in which suit the state is exercising a part of its sovereign power, and is in truth the party plaintiff.

**9. Removal of causes ☞41—Suit on behalf of state under invalid act is by prosecuting attorney.**

If the state statute authorizing a prosecuting attorney to bring a suit in its behalf as an exercise of its sovereign powers is contrary to the United States Constitution, a suit begun under such authority by the prosecuting attorney is removable as a suit by him as an individual.

**10. Removal of causes ☞107(4)—Contention held substantial, authorizing federal court's examination.**

In a suit removed from a state court, the contention of defendant that the Valentine Anti-Trust Act (Gen. Code Ohio, §§ 6390–6402), as construed by the Supreme Court of Ohio, was invalid, as depriving defendant of its property without due process of law, and as interfering with interstate commerce, is sufficiently substantial to give the federal court the initial right to determine whether the authority for suit on behalf of the state given by that statute was invalid, so that the suit was in fact brought by the prosecuting attorney, who instituted it for the state, and could be removed for diversity of citizenship, and, having jurisdiction to determine that question, the United States court also had jurisdiction to determine other questions involved, though the claim of unconstitutionality were unfounded.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**11. Removal of causes ⚖➡18—Existence of federal question determined by same principles as in original federal suits.**

When the existence of a federal question through a claim of unconstitutionality determines the jurisdiction of the federal court, the same principles apply, whether the jurisdiction is invoked by original pleading or by removal petition.

**12. Removal of causes ⚖➡18—Whether constitutional question involves only law, or law and fact, immaterial.**

There is no distinction, in determining the jurisdiction of the United States courts, whether the United States constitutional question involves a mere application of legal principles to conceded facts or depends upon disputed facts.

**13. Principal and agent ⚖➡149 (2)—Unauthorized act by agent is his act.**

Though the act of an agent on behalf of the principal and in the principal's name is the act of the principal, if there is due authority, the act is that of the agent, if there is no authority.

**14. Courts ⚖➡366 (2)—State decision held not binding, as affecting question of removal.**

The decision of the state court that in a suit to enforce a state statute the state is the party plaintiff is binding on the federal courts, in so far as it is a construction of the statute or of practice or pleadings, but is not conclusive against the right of removal, where defendant contends the statute violated the United States Constitution, and therefore did not authorize the suit, which was in effect the suit of the officer instituting it.

**15. Removal of causes ⚖➡42—Suit for injunction and receiver held civil action.**

A suit on behalf of the state, by a prosecuting attorney of a county, for an injunction and receiver to take possession of property held in storage in violation of the Valentine Anti-Trust Act (Gen. Code Ohio, §§ 6390–6402), is a civil action, if the authority to institute it is invalid, so that it is in effect a suit by the prosecuting attorney.

**16. Removal of causes ⚖➡97—Order dismissing suit against petitioner after bond was filed is void.**

In a suit in a state court against two defendants, one of whom was a nonresident of the state, an order dismissing the suit as against the nonresident, entered after the nonresident had filed a sufficient petition and bond for removal of the separable controversy against it to the United States court, was void, because entered after the state court had lost jurisdiction.

**17. Courts ⚖➡405 (5)—Jurisdiction not being sole question, Circuit Court of Appeals has jurisdiction.**

Where plaintiff in a suit in the state court, after the removal to the United States court, refused to offer proof, and the latter court dismissed the original petition, not solely for plaintiff's refusal to acknowledge its jurisdiction, but also on the merits, after hearing proofs offered by defendant, the jurisdiction of the District Court was not the sole question in controversy on appeal from the decree dismissing the petition, so that the Circuit Court of Appeals had jurisdiction over an appeal therefrom.

Appeal from the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

Suit by the State of Ohio, on the relation of Allen J. Seney, Prosecuting Attorney of Lucas County, Ohio, against Swift & Co. and another, begun in the state court, and removed by the named defendant into the United States District Court. From a decree dismissing the original petition, relator appeals. Affirmed.

Sections 6390–6402 of the Ohio General Code constitute what is known as the Valentine Anti-Trust Act. It was originally passed in 1898. Section 6391 defines a trust, among other definitions, as a combination to create or to carry out restrictions in trade or commerce, or to increase the price of a commodity, or to prevent competition in the sale of a commodity. Such a trust as is defined therein is said to be against public policy and void. Except as indicated by this declaration of invalidity and by section 6393, which declares that contracts in violation of the law are void, there is no prohibition of participation in a "trust"; but it is provided by section 6395 that one who violates any provision of the law shall forfeit certain penalties, to be recovered in the name of the state, and by section 6396, that a violation of any provision is a conspiracy against trade, and any participant shall be fined or imprisoned. Section 6400 directs that the several courts of common pleas (being the ordinary trial courts of the counties) are invested with jurisdiction to restrain and enjoin violations of the law, and that the Attorney General or prosecuting attorney of the proper county shall institute proper proceedings, in quo warranto, injunction, or otherwise, by way of petition, setting forth the case, and praying that such violation shall be enjoined or otherwise prohibited.

By the so-called Smith Cold Storage Act approved March 30, 1910 (107 Ohio Laws, p. 594), it was provided (referring only to the parts now important) that no person shall sell, or offer or expose for sale, any pork which has been held in a cold storage house for a longer period of time than six months. Section 19 says that whoever violates any provision of the act shall be guilty of a misdemeanor, and for the first offense shall be fined, and for later offenses be fined and imprisoned.

In the summer of 1919, proceedings were commenced against the Columbus Packing Company, by which it appeared that it had kept a quantity of pork in cold storage more than six months. Without allegation or claim that there had been any sale or attempted sale of this article, so as to make an express violation of the Cold Storage Act, or that there had been any contract or arrangement between the Packing Company and the Cold Storage Company, except for the storage which had taken place, and without any trial or opportunity for trial as to whether the owner intended to sell the product in express violation of the Cold Storage Act, or intended any restriction in trade or other violation of the Anti-Trust Act, or as to whether such storage would be in fact injurious to any public interest under existing conditions, summary orders were made that a receiver be appointed to take possession of the property, that he sell the same forthwith at retail in the city markets of Columbus, and that the proceeds of such sale, less the expense of the proceedings, be paid to the owner of the pork. Upon eventual review by the Supreme Court of Ohio, these orders were, on August 27, 1919, affirmed. Columbus Packing Co. v. State ex rel. Schlesinger, 100 Ohio St. 285, 126 N. E. 291.

On the same day, August 27, 1919, a petition was filed in the common pleas court of Lucas county, Ohio, which was entitled, "State of Ohio ex rel. Allen J. Seney, Prosecuting Attorney of Lucas County, Ohio, Plaintiff, v. Swift & Company and the Northern Refrigerating Company, Defendants." This petition alleged that Swift & Co. had placed with the Refrigerating Company, in cold storage, a large quantity of pork carcasses, which had then been in storage for more than six months; that Swift & Co. and the Refrigerating Company had agreed to hold this in cold storage for more than six months for the purpose of increasing the price of the property stored, and that thereby they had created and carried out restrictions in trade and commerce, and had caused the property to be withdrawn from the usual and proper channels of trade, and had caused prices of similar products to be unlawfully increased. In this petition, the relator further alleged that Swift & Co., unless restrained, would take the property from cold storage, and sell it or offer it for sale, within the county of Lucas or elsewhere, contrary to law. He further alleged that, unless an injunction be issued, the parties would remove the property from the jurisdiction of the court and would continue to disregard the law, unless a receiver was appointed to carry out the restraining

order and take charge of and control the property which had been so held for more than six months. Thereupon the petition prayed that the Refrigerating Company be enjoined from delivering, and that Swift & Co. be enjoined from receiving or obtaining possession of, the property, and that the court appoint a receiver to take charge of the property and keep it until the final order be made, and that the defendants be enjoined from any further acts or crimes in restriction of trade and commerce. Upon the filing of this petition, and without notice, the Refrigerating Company was enjoined from delivering to Swift & Co., and Swift & Co. was enjoined from receiving, any of the property in question, and a receiver was appointed "to seize said property and take charge of and keep" the same "until further order of the court."

On August 30th the relator filed a motion, asking an order that the receiver sell the property "at the earliest possible date and in such manner as the court may prescribe." Notice was given to Swift & Co. that this motion would be heard September 3d. On September 2d Swift & Co. filed in the common pleas court its petition for the removal of its separable controversy in this cause to the United States District Court for the Northern District of Ohio. What seems to have been regarded as a sufficient bond on removal was filed at the same time. Notice was given that this petition and bond would be presented to the judge on September 3d. This was done, and the relator then asked delay on both matters until September 5th. Without entering any order, the court delayed accordingly. On September 5th the relator applied for an order—and the court entered the same—dismissing Swift & Co. without prejudice, from the action, and the hearing of the motion for an order of sale was passed until September 8th. On September 11th, Swift & Co. filed in the court below a certified copy of the proceedings in the court of common pleas, and on September 12th filed its answer and cross-petition in the cause so removed. Thereupon the relator moved to remand, and Swift & Co. moved to have the receiver discharged and the property returned to it, and for final judgment on the pleadings, and because relator declined to proceed further. The court below denied the motion to remand, and upon the hearing of defendant's motion proofs were taken on behalf of Swift & Co. The relator declined to take any proofs as against this motion or in support of his petition. Thereupon, on October 8th, the court ordered the receiver to be discharged, the property to be returned to Swift & Co., and the order, after reciting that relator declined to take any proofs or proceed in the cause, and finding that the property was in transit in interstate commerce, finally dismissed the original petition. Upon application made to this court for a stay of this order pending appeal, we directed a stay, unless Swift & Co. should give a certain bond, the conditions of which are hereafter stated. This bond was given and the property returned to Swift & Co., subject to its duties fixed by this bond.

Upon the hearing below (as is shown by the recitals of the opinion and by concessions of counsel [in part] as well as by the testimony printed), it was made to appear that the property consisted of certain parts of the carcasses of hogs which had been slaughtered by Swift & Co., at Cleveland, from six to eight months before the relator's petition was filed; that they were and had been intended only for manufacture into bacon at Swift & Co.'s factory, in Chicago, for which purpose they were material of great value, and that in their existing condition they were of comparatively little value for retail sale; that Swift & Co. had been engaged in supplying bacon to the government, and especially to the American Expeditionary Force, in great quantities, and did not have sufficient storage facilities in Chicago; that in the summer of 1919 this situation had not yet been relieved; and that the carcasses in question had all been shipped from Cleveland to Chicago, and had been held in Toledo in cold storage pending their further shipment to Chicago. Relator expressly conceded that he had no proof of any intent to sell in Ohio. A tariff, duly approved by the Interstate Commerce Commission, expressly permitted stoppage in transit for cold storage in such cases for a period of nine months, and this storage of this pork at Toledo had been within and covered by this transit privilege. The privilege would soon expire, and, unless the shippers could have prompt possession and proceed with

shipment to Chicago, they would not only lose the advantage of their through rate, but the property might lose its character as being in the process of interstate shipment.

Allen J. Seney and Nolan Boggs, both of Toledo, Ohio, for appellant.
Harold W. Fraser and E. J. Marshall, both of Toledo, Ohio (A. L. Boylan, of Sioux City, Iowa, and Marshall & Fraser, of Toledo, Ohio, on the brief), for appellees.

Before KNAPPEN, DENISON, and WARRINGTON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). Upon this statement of facts, it is too clear for doubt that these Ohio laws could have no application to this property, which had remained in cold storage in the state only as an incident to its lawful interstate transportation, and that Swift & Co. was entitled to its immediate return. Indeed, relator now and here makes no contention to the contrary, but accepts the consequences of his deliberate election to stand upon the question of jurisdiction of the court below, and to refuse to file a reply or to litigate the merits of the case made by Swift & Co. If the relator had been able to and had seen fit to make it appear to the court below that the property was not in good faith merely stopped as incidental to an interstate trip, but was really Ohio property, kept in storage in violation of Ohio law, this case would have a different aspect; but we must take the record as we find it. The only question preserved and now in controversy in this court is whether the court below acquired jurisdiction by the petition for removal.

Removal is sought to be upheld because: (1) The controversy is controlled by, and necessarily involves, the Constitution or laws of the United States; (2) defendant cannot enforce, in the judicial tribunals of Ohio, its equal, civil rights as a citizen of the United States; (3) the parties are citizens of different states.

[1] 1. *The laws of the United States.* It is said that these are involved in three ways: (a) The property was in transit in interstate commerce, pursuant to and under the authority of the methods sanctioned by the Interstate Commerce Commission, and hence was not subject to seizure in the Ohio courts; (b) the procedure initiated by petition was a step in the taking of plaintiff's property without due process of law, in violation of the Fourteenth Amendment; (c) the Lever Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛r), so called, had, for the time of the war, superseded the Smith Cold Storage Act, and the case, therefore, called for application and construction of the Lever Act.

It is enough to say of all these contentions that they present matters of defense, and that the suit or proceeding commenced by the petition plainly did not arise under the Interstate Commerce Act (24 Stat. 379), or the Fourteenth Amendment, or the Lever Act. It is well settled that the entry of a federal question into a case by way of defense, although it may present the controlling or the only disputed question, does not justify removal under section 28 of the Judicial Code (Comp.

St. § 1010). In re Winn, 213 U. S. 458, 29 Sup. Ct. 515, 53 L. Ed. 873.*

[2] 2. *Denial of Civil Rights.* Whether the situation, which defendant, by argument, undertakes to present on this subject, could in any event justify removal under section 31 of the Judicial Code (section 1013), we need not consider. The effort to support removal under this section is an afterthought. The removal petition has only one allegation which is now claimed to be pertinent on this point. It is to the effect that "certain courts" of the state of Ohio have construed the statutes and laws of Ohio so as to permit the seizure and taking of plaintiff's property without due process of law, whereby "petitioner will be unable to enforce its rights under the laws of the United States." This comes very far short of the full and exact statement of deprivation of civil rights which would be necessary, if it could be thought that section 31 has any reference to such a controversy as this. See Iron Mountain Co. v. Memphis, 96 Fed. 113, 122, 37 C. C. A. 410; Kentucky v. Powers, 210 U. S. 1, 26 Sup. Ct. 387, 50 L. Ed. 633, 5 Ann. Cas. 692.

[3] 3. *Diverse Citizenship.* Whether this gives ground of removal depends upon the question whether the suit in the state court should be treated by us as brought by the state of Ohio or by Mr. Seney. In the former case it is too plain for discussion that there could be no removal, because the court below would not have had jurisdiction of such a suit brought originally in that court, as well as for other reasons, and in the latter case the right to removal is too clear to be doubted; but the solution of the question as to who should, for the purpose of removal, be considered as the plaintiff, is full of complication and difficulty.

[4] The original petition does not make this clear. The title which is prefixed to the complaint names the state of Ohio as plaintiff, and Mr. Seney as relator; but a case has no existence, so as to have a title, until it has been commenced, and a purported title, unnecessarily indorsed upon a complaint, could hardly have any serious effect upon the question of who were the parties specified in the complaint. Plainly, an indorsement of title, giving the names of parties who were citizens of different states, would not make the cause removable, if the essential facts did not appear in the complaint; and the converse seems equally true. Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, 35 L. Ed. 363.

The complaint itself is not clear. It begins:

"Plaintiff, for his cause of action herein, says that he is the duly elected, qualified, and acting prosecuting attorney of Lucas county, Ohio, and that he brings this action in his official capacity on behalf of the state of Ohio."

All the further allegations and prayers of the complaint are introduced by "plaintiff says" or "plaintiff prays." The complaint is signed, "Allen J. Seney, Prosecuting Attorney of Lucas County, Ohio," and is verified by "Allen J. Seney." He does not allege that any law authoriz-

*But see Smith v. Kansas City Title & Trust Co. (Feb. 28, 1921) 254 U. S. —, 41 Sup. Ct. 243, 65 L. Ed. —

es him to cause the state to sue or to be sued. The consent of the state to be a party is essential, and it can be given only by those authorized. Ordinarily, the state sues by the Attorney General, and even he should point out his authority to implead the state.

[5] Citizens may often bring suit on behalf of a state, and the citizen may be and continue the plaintiff of record. The naming of the plaintiff's office may well be that mere description of the person which does not affect plaintiff's identity. In the general common-law suit by A., "for the use and benefit of B.," A. is the party; B. is not. Would Mr. Seney be personally liable for the costs of this action; and, if so, does that indicate that he is plaintiff? In any event, we think it right to say that it is not clear upon the face of the petition that it is a suit by the state of Ohio. It is not necessary to go farther in this direction, and we therefore omit any discussion of the common-law practice, the Ohio Code, and the Ohio decisions as to the real party in such a case.

[6] It is well settled that the right to remove on the ground of diverse citizenship is usually to be determined by the removal petition, but the record may be referred to to supplement the petition, where that is incomplete. Bondurant v. Watson, 103 U. S. 281, 286, 26 L. Ed. 447, McAllister v. Chesapeake, 243 U. S. 302, 305, 37 Sup. Ct. 274, 61 L. Ed. 735.[1] Certainly the petition to remove prevails, unless distinctly inconsistent with the record. Here we find the petition for removal distinctly and clearly alleging that the plaintiff is Allen J. Seney, who was and is a citizen of Ohio, and the defendant petitioner is Swift & Co., which was and is a citizen of Illinois, and that the controversy is between citizens of different states. If we should look no farther, we would be inclined to think that the removal petition, standing as an interpretation of a doubtful complaint, makes out a case of diverse citizenship; but this conclusion is not very important, because we must look farther.

[7] Whenever they become relevant from any aspect, we must take judicial notice of the decisions of the Supreme Court of Ohio,[2] and thus we have before us, just as if it were fully pleaded in the record, the decision of that court in the Columbus Packing Co. Case, and the whole situation with reference thereto which we have recited in the statement of facts.

[1] The cases which confine us to the complaint in determining the right of removal (Bankers' Co. v. Railway, 192 U. S. 371, 383, 24 Sup. Ct. 325, 48 L. Ed. 484) are those involving only the question whether the suit was one "arising under the laws of the United States." It seems obvious enough that the means by which an action takes on form and substance and thus comes into existence must be the sole criterion of how it "arises." Not so when other characteristics of the action—as the citizenship of the parties—are to be determined.

[2] True it was said in Mountainview Co. v. McFadden, 180 U. S. 533, 535, 21 Sup. Ct. 488, 45 L. Ed. 656, that the court will not take judicial notice of an act of Congress, in order to ascertain that the suit was really one arising under the laws of the United States, when the plaintiff's pleadings made no such claim. Plainly, this is not to say that we cannot take notice of the laws and decisions of a state to aid us in determining whether diverse citizenship exists.

[8] The complaint in this case is, with only the necessary changes, copied from that in the Columbus Case; it seeks the same relief, and it is in the same form as to the party plaintiff. While the matter of parties was not there expressly considered by the Ohio Supreme Court, its decision undoubtedly involves and affirms the proposition that the laws of Ohio authorize the prosecuting attorney to bring such a suit on behalf of the state; that in such a suit the state is exercising a part of its sovereign power; and hence that the state is, in truth, the party plaintiff. So, if we stopped here, we must conclude that the action was not removable.

[9] However, we cannot stop here any more than we could stop when we had seen the face of the pleadings. We cannot take judicial notice of a part of the situation created by the Columbus Case to supplement the deficiency of the complaint in showing that the state was a party, and refuse to take notice of the remainder to supplement the imperfections of the removal petition as entitling defendant to claim that the state is not truly a party. When, considered in connection with the Columbus decision, the removal petition clearly shows the facts upon which defendant now stands in supporting the removal on the ground of diverse citizenship. This position is that the Ohio Anti-Trust and Cold Storage Acts, when interpreted as they have been by the Ohio court, and when applied as is sought by this complaint, lead to a taking of property without due process of law, and are in so far in violation of the federal constitution, and hence that a suit by the prosecuting attorney, even if it purports to be in enforcement of the state law, is not justified by such law, but is his personal act, so that he, and not the state, is the plaintiff. We therefore feel compelled to consider this proposition, just as if it were more formally and artificially set out in the removal petition.

We have the less hesitation in passing by matters of form and coming to this substantial issue, because the only ultimately important matter is whether this question—the effect of the Columbus decision to work a violation of the Fourteenth Amendment—should be initially decided by the state or federal trial court, and so, ultimately, reach the court of last resort through one or another channel, and this matter is practically removed from controversy by the existence in the court below of an equity suit, begun by Swift & Co. against Seney. In that case, the equity jurisdiction of the court below is invoked to enjoin this same action, brought by Mr. Seney in the state court, and it is fully and formally alleged that he is proceeding under color of an unconstitutional law. So far as we see (the point has not been argued), the jurisdiction of the court below to decide in that case this vital question of constitutionality is unassailable, and it would be a matter of little importance to any one to order remand of this case to the state court, and yet to leave the jurisdiction of the court below over the same controversy in the companion equity case unimpaired. Our hesitation is still less because, under the present statutes, the petition to remove might be amended, even in this court, so as to clear up all matters of form that now embarrass. Judicial Code, § 274c, as amended March 3, 1915 (Comp. St. § 1251c).

[10] Upon the issue of unconstitutionality, defendant's argument is this: The construction of state statutes by the state court is binding upon this court, and the acts must be read as if they contained express provisions and declarations that their force and effect are as declared in the Columbus Case. Even if that case is not merely a construction of statutes, but declares the common law, or general principles analogous to the common law, if the result is to deprive defendant of its property, that result is the action of the state, no less than if it were by express statute. The law of the state, under which defendant's property is being taken, is therefore that one who has stored pork for more than six months is conclusively presumed to have done so for the purpose of restraining trade, and may not be heard in any court to deny this unlawful purpose or effect,[3] and that his property shall be thereupon taken over into the possession of the state, and put upon the retail market and sold, returning to him the net proceeds of the sale. This is the law, without regard to the quantity stored or its actual effect, or whether it has any effect, upon the market, without regard to the wholesomeness of the article at the end of the storage, without regard to the amount in existence or in storage by others, without regard to whether the property is in a condition which makes it incapable of public retail sale without practical confiscation, and without regard to the fact that the owner has not violated any provision found in the statutes (which do not forbid storage for more than six months, but only a sale—presumably in Ohio—after such period).

We do not intend either to adopt or deny any of these statements or inferences by reciting them. We have no need to do so. They certainly are sufficient to support and justify the conclusion that defendant is in good faith, and not merely formally, asserting the unconstitutionality of the Ohio laws in this respect, and hence asserting that Mr. Seney is not authorized under those laws to proceed by his complaint on behalf of the state, and hence that he is himself the party. Ex parte Young, 209 U. S. 123, 159, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Western Union v. Andrews, 216 U. S. 165, 30 Sup. Ct. 286, 54 L. Ed. 430; Home Co. v. Los Angeles, 227 U. S. 278, 33 Sup. Ct. 312, 57 L. Ed. 510; Truax v. Raich, 239 U. S. 33, 37, 36 Sup. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283; Cavanaugh v. Looney, 248 U. S. 453, 456, 39 Sup. Ct. 142, 63 L. Ed. 354; Greene v. Louisville, 244 U. S. 507, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88.

The good faith assertion of the unconstitutionality of the state law gives jurisdiction to a federal court, and this jurisdiction continues, both to decide the constitutional question, and to decide all other, even nonfederal, questions involved, and even though the court may conclude that the claim of unconstitutionality is unfounded, or may pass it without decision (Siler v. Louisville Co., 213 U. S. 175, 191, 29 Sup. Ct. 451, 53 L. Ed. 753); and if this same good faith assertion operates to determine that the state is not a party, it must likewise continue to have that effect, regardless of how it may be decided.

---

[3] See McFarland v. American Co., 241 U. S. 79, 36 Sup. Ct. 498, 60 L. Ed. 899.

[11] When the existence of a federal question through a claim of unconstitutionality determines the jurisdiction of the federal court, the same principles must apply—so far as we can see—whether the jurisdiction is invoked by original pleading or by removal petition. In either case, the prima facie jurisdiction of the state court is to be ousted by that of another tribunal which, for this purpose and to this extent, is dominant. The application of the same principles to both these situations was approved in Missouri Ry. v. Missouri Commissioners, 183 U. S. 53, 59, 22 Sup. Ct. 18, 46 L. Ed. 78.

[12] Whether the application of the laws of Ohio, proposed by Mr. Seney's complaint, would work a violation of the Fourteenth Amendment, may depend in part upon questions of fact—e. g., whether the proposed sale would bring confiscation; whether the property involved was so impressed with an interstate character as to be beyond the declared policy of Ohio, etc. But if we were to pass this view, and assume that such violation depended wholly upon matters of law arising upon the undisputed facts, and upon the view to be taken of the state laws and the Columbus case, the result would be the same. It might be thought that, since every one is bound to know the law, a claim of unconstitutionality which was based upon mere application of legal principles to the conceded facts, would not support the federal jurisdiction after the claim had been found to be erroneous; but the cases seem to recognize no distinction between questions of constitutionality dependent on disputed facts and those dependent on mere observation of the state laws. See Caldwell v. Sioux Falls Co., 242 U. S. 559, 564, 37 Sup. Ct. 224, 61 L. Ed. 493 ("Blue Sky" Case) ; Tanner v. Little, 240 U. S. 369, 36 Sup. Ct. 379, 60 L. Ed. 691 ("Trading Stamp" Case).

[13] Principles analogous to those we have referred to—if not the identical ones—have been applied by the Supreme Court to develop a sufficient case of diverse citizenship in a removal petition (Missouri Ry. v. Missouri Commissioners, supra), and, if the question remains open to us after that decision, we see no escape from their due application there as elsewhere. The question which has been involved in numerous cases (e. g., Ex parte Young) is whether the real party defendant was the state, or was an officer of the state, who must be considered as acting in his personal capacity, because his claimed authority to act for the state failed. The principle is the familiar one of agency. An act done by the agent, on behalf of the principal and in the name of the principal, is the act of the principal, if there is due authority; otherwise, the act is that of the agent. The same rule must apply to a party plaintiff as to a party defendant, and when we find that because the constitutionality of the state law is at stake, the party is the individual, and not the state, this finding supports the conclusion of diverse citizenship equally well as it does the conclusion that the Eleventh Amendment does not protect.

[14] The decision of the state court to the effect that the state is the party plaintiff would bind the federal courts in so far as it was a construction of the statutes or of practice or pleadings, but its conclusion rests on the premise that the law is valid; and it is this very premise which Swift & Co. had a right to challenge in the federal courts

through invoking the Fourteenth Amendment, and when this is done the conclusion fails. To say that the state court decision binds us as to who should, for the purposes of this suit, be considered the party, would be to say that the state court's finding or assumption of constitutionality would forbid the kind of contest in the federal courts expressly sanctioned by Ex parte Young, and that line of cases.

We therefore conclude that the petition for removal stated a good case therefor on the ground of diverse citizenship.

[15] The plaintiff further contests the removal because he says the action commenced by his complaint was not a civil action, but was rather one based upon and for the enforcement of the Ohio penal statutes. So far as concerns the form of the matter, this is plainly a civil action. It is not brought to cause imprisonment or to collect a penalty, but it is a proceeding in a court of equity, commenced by proper pleading, having a plaintiff and having defendants, seeking an injunction and a receiver, and, further, practically final relief through the receivership. This answers every description of a civil action, rather than of the criminal or penal actions with which those of a civil nature must be contrasted. Cases like those in which a city, which is a branch of the state government is undertaking to enforce its ordinances by injunction and at the same time to collect the tax and the penalty secured by the ordinance (City of Montgomery v. Postal Co. [D. C.] 218 Fed. 471) are distinguishable, as soon as stated.

So far as concerns the substance of the matter, the question on this objection is the same as on the matter of diverse citizenship. If the action were one by the state of Ohio, it would have the color of, and it might be considered as, a proceeding in execution of its sovereignty rather than a mere civil action; but since the validity of the Ohio law is forcefully challenged under the Fourteenth Amendment, Mr. Seney cannot be heard to say that the action is by the state rather than by him.

[16] The plaintiff next contends that the removal was ineffective because the state court had granted plaintiff's request to dismiss the action as against Swift & Co., and so there was nothing left to remove. It is not easy to see how an action in equity can rightly be dismissed as against that defendant who is the sole party substantially interested on the side of the defense; but that does not concern us. If the dismissal was effective, removal was not Swift & Co.'s remedy.

The petition and bond for removal (theretofore duly filed) were presented to the judge of the state court on September 3d, pursuant to notice theretofore given by plaintiff. The sufficiency of the bond has never been questioned, nor has that of the notice. The state court did not then, or ever, make any order of removal, but continued until September 5th the question as to whether it would make such order and the question whether it would grant plaintiff's motion that the receiver be ordered to sell the property. Under these circumstances, the jurisdiction of the state court over Swift & Co. terminated not later than September 3d, and the order of dismissal made September 5th was void. Traction Co. v. Mining Co., 196 U. S. 239, and cases cited on page 244, 25 Sup. Ct. 251, 49 L. Ed. 462; Remington v. Central Co., 198 U. S.

95, 99, 25 Sup. Ct. 577, 49 L. Ed. 959; Chesapeake v. McCabe, 213 U. S. 207, 217, 29 Sup. Ct. 430, 53 L. Ed. 765; Chesapeake v. Cockrell, 232 U. S. 146, 154, 34 Sup. Ct. 278, 58 L. Ed. 544; Iowa v. Bacon, 236 U. S. 305, 310, 35 Sup. Ct. 357, 59 L. Ed. 591; Bank of Fritzlen (C. C. A. 8) 135 Fed. 650, 653, 68 C. C. A. 288; Donovan v. Wells Fargo (C. C. A. 8) 169 Fed. 363, 365, 94 C. C. A. 609, 22 L. R. A. (N. S.) 1250.

[17] We observe no defect in the jurisdiction of this court. If the final decree of the court below dismissing plaintiff's petition had been based solely on the plaintiff's refusal to acknowledge the jurisdiction of the court and refusal to proceed with his case in that court below, there would have been no question, except that of jurisdiction; the situation would have been somewhat analogous to that in McAllister v. Chesapeake Co., 243 U. S. 302, 305, 37 Sup. Ct. 274, 61 L. Ed. 735, and it would have been necessary to consider whether the exclusive jurisdiction to review was vested in the Supreme Court. This was not what occurred. After the refusal of the plaintiff to proceed, the court, on its own motion, took testimony to satisfy it as to what the right of the matter was. By this testimony it prima facie appeared that the property was in process of interstate transportation, resting under a storage in transit privilege, and never had been intended for sale in Ohio, and hence that, in the opinion of the court, the complaint should be dismissed, even if the Columbus Case were to be accepted as beyond criticism. The plaintiff might have contested these claims. It did not; and the final action of the court rested, in part, upon these findings of a sufficient affirmative defense. The failure of the plaintiff, on his appeal to this court, to assign error against or to contest these further findings of fact and conclusions of law, does not show that the final decree of which he complains involved only a question of jurisdiction; he might have raised these questions without prejudice to his insistence against the jurisdiction.

One further matter requires mention: When we were asked to suspend the decree of the court below in order that the appeal might be effective, we thought that the interests of all would be best protected by allowing Swift & Co. to take its property and finish the manufacture before the material spoiled, but on condition that, if it failed in its contentions, it would restore the status quo by turning over equivalent property to the custody of the state court, and that it secure such restoration by a bond; and since it might not be apparent that the state would have any interest which would permit it to receive the penalty of the bond, we devised a special form of condition which we thought would meet the situation, and which is quoted in the margin.[4] So far

---

[4] "If it shall finally be determined either that the action commenced in the common pleas court of Lucas county, Ohio, on August 27, 1919, by Allen J. Seney, purporting to act for and on behalf of the state of Ohio, against Swift & Company and the Northern Refrigerating Company, was not duly removed to the District Court of the United States for the Northern District of Ohio, Western Division, and should be remanded, or be finally determined that the petitioner in that action, or the state of Ohio, has a right to the substantial relief sought by the petition, then, and in that event, Swift & Company shall, within thirty days, return to the receiver in said action, or otherwise to the custody of the court where such action then pends, either the

as this penalty was made to become payable upon the adverse termination of the controversy over the right to remove this case, we made an error in accomplishing our intent. Our purpose was to require this action by Swift & Co., if it should ultimately be determined that the state court, rather than the court below, had the initial right to determine whether Swift & Co.'s property was being taken unlawfully, and we omitted to observe that perhaps this controversy was as effectually removed from the state to the federal court by Swift & Co.'s bill in equity as by the removal petition. Since our present decision is subject to review, and resort to that bond may yet be necessary, it should be corrected, if the obligor desires, and should be, by the court below, surrendered up to be canceled on the presentation and filing of a bond the same in all respects, except that the condition, in place of the words "if it shall finally," to and including the words "or be finally," and, at the end of the condition, shall contain the words specified in margin.[5] The period of 30 days may also be changed to 90 days.

The decree and order below are affirmed, but the order of affirmance will include a direction for substitution of bond in accordance herewith.

same property which is to be delivered to it by the receiver upon the filing of this bond, or else the equivalent thereof in the same form, or in its further completed form of manufacture (without regard to additional value by reason of further treatment). The property so to be returned is to stand in place of that now taken from the receiver, and is to be disposed of as the court then in charge of such action shall direct.

"In case of default in such delivery, Swift & Company shall pay to the state of Ohio the sum of the penalty of this bond, as liquidated damages, such sum to be subject to such disposition as the present or future laws of Ohio may direct.

"It is definitely understood that this is a voluntary bond given by Swift & Company and the surety, pursuant to the offer of Swift & Company and as a condition of obtaining discretionary court action, and that the question of the right of the state to receive the money, if the bond is forfeited, cannot be raised in any court."

[5] "If it shall finally be determined that on the 8th day of October, 1919, the court of common pleas of Lucas county, Ohio, rather than the District Court of the United States, at law or in equity, for the Northern District of Ohio, was vested with the dominant jurisdiction to determine initially whether the property of Swift & Co. was rightly subject to seizure, as demanded by the petition of Allen J. Seney, purporting to act for and on behalf of the state of Ohio, filed in the common pleas court on August 27, 1919, against Swift & Co. and the Northern Refrigerating Company, or shall be finally."

At the end of the condition, the words "This bond is given nunc pro tunc in substitution for one filed ———, 1919, and speaks as of that date."