## VISAYAN REFINING CO., Inc., v. STANDARD TRANSP. CO. et al.

(District Court, S. D. New York. February 10, 1927.)

1. **Removal of causes ⬾25(1)—For removal purposes, suit arises under United States laws only when complaint by positive averment shows cause of action is based thereon.**

For purposes of removal, a suit is regarded as arising under the Constitution and laws of the United States only when plaintiff's statement of his own cause of action shows by positive averment that it is based on federal law.

2. **Removal of causes ⬾25(1)—Defense under United States Constitution or laws does not authorize removal.**

That defendant may find in Constitution or laws of United States some ground of defense controlling plaintiff's asserted right to recover is not ground for removal.

3. **Evidence ⬾52—Cause of action stated by complaint cannot be changed by judicial notice of facts relative to right of removal not alleged.**

Court cannot, by taking judicial notice of facts not alleged, change case from that stated by complaint relative to right to removal.

4. **Removal of causes ⬾19(5)—Cause of action to recover money paid under duress in excess of agreed freight on vessel held not to arise under federal law (Act June 15, 1917 [40 Stat. 182]; Comp. St. § 3115½of et seq.).**

Cause of action alleged in complaint to recover money paid under duress in excess of agreed freight on vessel *held* not to arise under Act June 15, 1917 (40 Stat. 182), or Act July 18, 1918 (40 Stat. 913 [Comp. St. § 3115½of et seq.]), or the President's proclamation thereunder.

5. **Removal of causes ⬾45—Defendant has no right of removal on claim of separable controversy, if resident of state where suit was brought (Judicial Code, § 28 [Comp. St. § 1010]).**

A defendant, who is a resident of the state where the suit was brought, has no right of removal to federal court on a claim of separable controversy, under Judicial Code, § 28 (Comp. St. § 1010).

At Law. Action by Visayan Refining Company, Inc., a Delaware corporation, against the Standard Transportation Company, also a Delaware corporation, and a New York corporation, brought in the state courts and removed to the federal court. On motion to remand. Granted.

Platt, Field & Taylor, of New York City (Martin Taylor and Arthur C. Patterson, both of New York City, of counsel), for plaintiff.

Peter M. Speer, of New York City (G. H. Dorr and Stafford Smith, all of New York City, of counsel), for defendants.

THACHER, District Judge. The motion is to remand the case to the state court, from which it was removed by defendants on the grounds that the suit arises under the Constitution and laws of the United States and the complaint discloses a separable controversy wholly between citizens of different states. The jurisdictional amount is involved.

In the first cause of action the complaint alleges that in June, 1917, defendants entered into an agreement with plaintiff to transport, during the years 1917 and 1918, all of the cocoanut oil manufactured by the plaintiff from the Philippine Islands to San Francisco at the rate of $40 per long ton. This agreement was conditioned upon the success of a trial shipment, upon the successful completion of which it is alleged the agreement became effective, and was confirmed by supplemental agreement in August, 1917. Pursuant to these agreements it is alleged that the plaintiff and defendants entered into certain charter parties for the transportation of cargoes of cocoanut oil at the rate of $40 per long ton, including a charter party dated April 4, 1918, covering a shipment from the Philippines on December 18, 1918, per steamship Royal Arrow, which arrived at San Francisco on February 5, 1919, and a charter party dated October 7, 1918, covering a shipment from the Philippines on November 11, 1918, per steamship Astral, which arrived at San Francisco on December 21, 1918. Each of these shipments exceeded 10,000 long tons of cocoanut oil. With respect to these two shipments it is alleged that in violation of their agreements the defendants compelled the plaintiff to pay, and the plaintiff paid under duress and protest, freight at the rate of $60 per net ton, in lieu of freight at the rate of $40 per long ton as provided in said agreements and in said charter parties. Recovery sought is for the excess freight moneys retained by defendants.

Two additional causes of action are set forth, in each of which it is alleged that the defendants accepted a certain quantity of cocoanut oil in the Philippine Islands, which they agreed to transport and deliver at San Francisco, Cal., at the agreed rate of $40 per long ton, but that, having transported each shipment to San Francisco, the defendants refused to deliver the oil until they had been paid at a rate in excess of the agreed rate, and that this excess was paid by the plaintiff under duress and protest in each case. There is no reference in either of these causes of action to any charter party or to any ship upon which the defendants agreed to or did transport the oil. As in the first cause of action, recovery of excess payments is sought.

The defendants contend that by reason of the Act of Congress of June 15, 1917 (40 Stat. 182), the executive order of the President of the United States issued pursuant to the provisions thereof on July 11, 1917, the General Order of the United States Shipping Board dated October 12, 1917, issued by authority of said executive order, and by reason of the Act of Congress of July 18, 1918 (40 Stat. 913 [Comp. St. § 3115⅛6f et seq.]), and the President's proclamation of July 29, 1918, issued pursuant to said act, this suit is one of a civil nature at law, arising under the Constitution and laws of the United States. The question upon which decision turns is whether, in view of these statutes, executive proclamations, and orders, the right to recover from the defendants moneys paid under duress, and in excess of the agreed freight, arises from these laws and executive orders. [1, 2] It is unnecessary to consider in detail the Act of Congress of June 15, 1917 (40 Stat. 182), the executive order of the President issued thereunder July 11, 1917, or the General Order of the United States Shipping Board dated October 12, 1917, because the authority to requisition vessels exercised by the Shipping Board, pursuant to the statute and order of the President is by the very terms of its order limited to the requisition of American steamers, and the exercise of this power does not touch the facts alleged in the complaint, because it is not alleged, even inferentially, that the shipments in question were made upon American vessels. By act of Congress trade between the Philippines and ports of the United States is open to foreign vessels. Act April 29, 1908, c. 152, § 3 (35 Stat. 70 [Comp. Stat. § 3913]). It cannot, therefore, be said that, from the facts alleged in the complaint, it appears that the suit arises under the Act of June 15, 1917, or the executive orders issued thereunder. This is controlling, because it is well settled that for the purposes of removal a suit is regarded as arising under the Constitution and laws of the United States only when the complainant's statement of his own cause of action shows by positive averment that it is based upon federal law. It is not enough that a defendant may find in the Constitution or laws some ground of defense controlling the plaintiff's asserted right to recover. Tennessee v. Bank of Commerce, 152 U. S. 454, 14 S. Ct. 654, 38 L. Ed. 511; Third St. & Suburban Ry. v. Lewis, 173 U. S. 457, 19 S. Ct. 451, 43 L. Ed. 766; Arkansas v. Kans. & Texas Coal

Co., 183 U. S. 185, 22 S. Ct. 47, 46 L. Ed. 144; In re Winn, 213 U. S. 458, 29 S. Ct. 515, 53 L. Ed. 873; State of Ohio v. Swift & Co. (C. C. A.) 270 F. 141.

[3, 4] Nor can the court, by taking judicial notice of facts which are not alleged, change the case from that stated by the plaintiff. Mountain View Min. & Mill. Co. v. McFadden, 180 U. S. 533, 21 S. Ct. 488, 45 L. Ed. 656; Venner v. New York Central R. R. Co. (C. C. A.) 293 F. 373. Tested by these rules, as they must be, the causes of action alleged in the complaint do not arise under the Act of June 15, 1917.

It remains to consider whether the suit arises under the Act of July 18, 1918 (40 Stat. 913, c. 157), and the President's proclamation of July 29, 1918. The material provisions of these statutes are as follows:

"(a) The term 'United States' includes any state, territory, or District of the United States, the insular possessions, the Canal Zone, and all lands or waters subject to the jurisdiction of the United States.

"(b) The term 'person' includes corporations, partnerships, associations, and states, municipalities, and other subdivisions thereof.

"(c) The term 'charter' means any agreement, contract, lease, or commitment by which the possession or services of a vessel are secured for a period of time, or for one or more voyages, whether or not a demise of the vessel.

"Sec. 2. That the President may exercise the power and authority hereby vested in him through such agency or agencies as shall determine from time to time.

* * * * *

"Sec. 5. That the President may, by proclamation, require that vessels of the United States of any specified class or description, or in any specified trade or trades, shall not be chartered unless the instrument in which such charter is embodied, and the rates, terms and conditions thereof are first approved by him. Whenever any vessel is comprised in any such proclamation, it shall be unlawful to make any charter thereof, or comply with or perform any of the rates, terms, or conditions of any charter thereof, or to operate such vessel under any charter, without first obtaining the approval thereof by the President.

"Whenever any charter of such vessel is approved, it shall be unlawful, without the approval of the President first obtained, to make any alterations in such charter, or additions thereto or deletions therefrom, or to make or receive any payment or do any act with respect to such vessel, except in accordance with such charter.

* * * * *

"Sec. 8. That the President may by proclamation extend the provisions of sections five, six, and seven, or any of them, to any vessel of foreign nationality under charter to a citizen of the United States or other person subject to the jurisdiction thereof.

* * * * *

"Sec. 16. That whoever does or attempts to do anything in this Act declared to be unlawful, or willfully violates any rule, regulation, or order issued under authority conferred herein, shall be punished by a fine of not more than $5,000 or by imprisonment for not more than two years, or both: Provided, That the district court of the Canal Zone shall have jurisdiction of offenses committed against the provisions of this act within the Canal Zone."

Comp. St. §§ 3115⅟₁₆f, 3115⅟₁₆ff, 3115⅟₁₆gg, 3115⅟₁₆hh, 3115⅟₁₆k.

So far as material, the President's proclamation is as follows:

"Now, therefore, I, Woodrow Wilson, President of the United States of America, acting under authority conferred in section 5 of said act, do proclaim that hereafter vessels of the United States, being full power driven vessels of 250 tons gross burden, or over, or sailing vessels with or without auxiliary power of 50 tons gross burden, or over, excepting vessels plying exclusively on the inland rivers and canals of the United States, vessels operating in the Great Lakes or other inland waters, and vessels operating exclusively in the coastwise trade of the United States, shall not hereafter be chartered unless the instrument in which such charter is embodied, and the rates, terms and conditions thereof, are first approved by the President.

"Under authority conferred in section 8 of said act, I do further proclaim that the provisions of said section 5, and of this proclamation, shall be and they are hereby extended to any vessel of foreign nationality under charter to a citizen of the United States or other person subject to the jurisdiction thereof. * * *

"I do hereby designate the United States Shipping Board as the agency through which shall be exercised all power and authority conferred upon the President in sections 5, 8 and 10 of said act with respect to the classes or descriptions of vessels and the trades specified in this Proclamation. Such power and authority may be exercised by said United

States Shipping Board through such agents or agencies as it may create or designate."

By the proclamation of the President, the provisions of section 5 of the act and the terms of the proclamation requiring that vessels of 250 tons gross burden or over "shall not hereafter be chartered unless the instrument in which such charter is embodied, and the rates, terms, and conditions thereof, are first approved by the President," are extended to any vessel of foreign nationality under charter to a citizen of the United States, or other person subject to the jurisdiction thereof. The power of approving the charters of such vessels is delegated to the United States Shipping Board. It is, however, to be noted that the proclamation is in terms prospective, and cannot have any retroactive effect upon charters made prior to July 29, 1918. The charter party dated April 4, 1918, and referred to in the first cause of action, and the pre-existing agreements by which the defendants agreed to carry plaintiff's oil at $40 per long ton, are therefore unaffected by the statute and the proclamation.

All that can be said of the charter party dated November 11, 1918, is that it was required to be approved by the United States Shipping Board. But this does not justify the conclusion that a suit to recover freight moneys paid under duress in excess of the charter rate arises under the law which requires government approval of the charter. The basis of the right to recover is founded, not upon the charter party, but arises ex æquo et bono from the acts of the defendants in demanding and receiving that which they are not entitled in equity and good conscience to keep, and whether the voyage charters were approved, as required by the law, or not, is quite irrelevant to the statement of the plaintiff's cause of action in the complaint. Roberts v. Ely, 113 N. Y. 128, 20 N. E. 606. Furthermore, if the cause of action could be regarded as arising ex contractu, which I believe it cannot, it would find sufficient basis in the agreements to carry at $40 per long ton all of the cocoanut oil manufactured by the plaintiff, which are not affected by the Act of July 18, 1918, or the proclamation thereunder. It seems clear from the plaintiff's statement of its first cause of action that its asserted right to recover is not and need not be predicated upon the approval of the charter party of November 11, 1918 by the United States Shipping Board. It may be that,

upon showing facts not disclosed by the complaint, it will appear that the laws of the United States to which reference has been made preclude recovery in this case; but this will not change, although it may defeat, the the cause of action which, as now alleged, arises quite independently of the statute.

What has been said has been said with particular reference to the first cause of action alleged in the complaint. It is only necessary to add, with reference to the second and third causes of action, that they do not disclose the making of any charter party within the statutory definition, the allegations being simply to the effect that the plaintiff delivered to the defendants, and the defendants accepted and agreed to transport at an agreed rate, without specifying any ship whatsoever. These allegations do not show either that the possession or the service of any particular vessel was secured for a period of time or for a particular voyage. Thus it cannot be said that the act or the proclamation thereunder have any application whatsoever to the facts alleged in the second and third causes of action. It must, I think, be concluded that this suit does not arise under the Constitution or laws of the United States.

[5] The defendant Standard Oil Company of New York, independently of the other defendant, asserts the right to remove upon a claim of separable controversy under section 28 of the Judicial Code (Comp. St. § 1010), but this defendant is a citizen of the state of New York, where the suit was brought. In support of its right to remove, Stanbrough v. Cook (C. C.) 38 F. 369, 3 L. R. A. 400, is the only decision in the Federal Courts which is cited. That case was overruled in the Circuit Court of Appeals for the Eighth Circuit in Thurber v. Miller, 67 F. 371, which has been followed in Wichita National Bank v. Smith (C. C. A.) 72 F. 568; Monroe v. Williamson (C. C.) 81 F. 977; Drovers' Deposit Nat. Bank v. Tichenor (D. C.) 202 F. 1013; Whitaker v. Coudon (D. C.) 217 F. 139. The rule in the Thurber Case was assumed to be unquestionable by Judge Lacombe in Wrightsville Hdwe. Co. v. Hardware & W. Mfg. Co. (C. C.) 180 F. 586, and Wrightsville Hdwe. Co. v. Colwell (C. C.) 180 F. 589. See Judge Rose's opinion in Whitaker v. Coudon, supra. It has the support of high authority, which has not been questioned, and should be followed in this court.

The motion to remand is granted.