**NUCLEAR ENGINEERING COMPANY, Plaintiff-Appellee,**

v.

**William J. SCOTT, Defendant-Appellant.**

**ILLINOIS ex rel. William J. SCOTT, Plaintiff-Appellant,**

v.

**NUCLEAR ENGINEERING COMPANY, Defendant-Appellee.**

**No. 80–2239.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 27, 1981.

Decided Aug. 26, 1981.

Rehearing Denied Oct. 9, 1981.

Greig Siedor, Springfield, Ill., for defendant-appellant.

Calvin Sawyier, Winston & Strawn, Chicago, Ill., for plaintiff-appellee.

Before PELL and SPRECHER, Circuit Judges, and MAROVITZ,* Senior District Judge.

MAROVITZ, Senior District Judge.

These two consolidated cases concern the operation of a hazardous waste storage facility by Nuclear Engineering Company (NEC) at Sheffield, Illinois. This interlocutory appeal, brought pursuant to 28 U.S.C. § 1292(b), raises issues pertaining to the existence of federal subject matter jurisdiction over the two cases. For the reasons set forth below, we find that the district court is without jurisdiction to entertain these actions.

I. *Introduction.*

In a sense, the origin of the dispute underlying these cases can be traced to a press conference held on April 22, 1980 [1] by former Illinois Attorney General William J. Scott. At the press conference, Scott announced that he intended to commence lawsuits against persons he believed to be violating Illinois' environmental protection laws, among whom was NEC for its operation of the Sheffield facility. The Sheffield facility is used for the storage of explosives and chemical and radioactive wastes.

---

* The Honorable Abraham L. Marovitz, Senior District Judge of the Northern District of Illinois, is sitting by designation.

1. The press conference was scheduled in observation of the tenth anniversary of "Earth Day," a day commemorating the environmental protection movement.

On May 8, 1980, NEC filed an action in United States District Court for the Central District of Illinois against Scott as an individual and in his official capacity (the "NEC action"), alleging jurisdiction under 28 U.S.C. §§ 1331(a), 1332(a), and 2201–02. The federal law gravamen of NEC's complaint is that Scott has threatened to require NEC to cease operation of the Sheffield facility and to remove all hazardous wastes now stored there in violation of NEC's fourteenth amendment due process rights and its rights under the Resource Conservation and Recovery Act of 1976, 42 U.S.C. §§ 6901–6987 (the "RCRA").[2] NEC states in its complaint that its Sheffield facility is operated pursuant to all permits required by the Illinois Environmental Protection Act (the "IEPA") Ill.Rev.Stat. ch. 111½, §§ 1001–51, and is subject to the provisions of the RCRA relating to the disposal of hazardous wastes.[3] NEC alleges that if Scott were to institute proceedings against it to force the discontinuance of its operation of the Sheffield facility, Scott would be "acting unlawfully outside the powers of his office."

NEC claims that Scott's alleged threatened interruption of its services is injuring it in that current and potential customers are seeking the services of a handler of hazardous wastes whose services are not so threatened. NEC also alleges that Scott's threatened action is causing it injury in that its ability to obtain financial investment is being impaired. NEC seeks a declaratory judgment providing that as long as it complies with the RCRA and all state and local law with respect to its operation of the Sheffield facility it may continue the operation of that facility. Further, NEC requests that an injunction be issued restraining Scott from instituting any civil action against NEC as to its operation of the Sheffield facility.

On May 20, 1980, Scott filed a four-count complaint against NEC and Teledyne Industries, Inc.[4] in Illinois Circuit Court for the Thirteenth Judicial Circuit (the "Illinois action"), alleging that the Sheffield facility was being operated in violation of state statutory and common law. Specifically, Counts I and II assert violations of provisions of the IEPA, Count III alleges a violation of Ill.Rev.Stat. ch. 14, §§ 11 and 12,[5] and Count IV alleges a common law nuisance. The Illinois action seeks an injunction requiring NEC to cease the operation of its Sheffield facility and to remove all hazardous wastes stored there. The Illinois action also seeks the assessment of penalties for each violation of state law alleged and for each day of continued operation of the facility in violation of state law.

On the same day the Illinois action was filed, Illinois moved in district court to dismiss the NEC action asserting, *inter alia*, that the district court lacked subject matter jurisdiction over the NEC action and, in the alternative, that the district court should abstain from hearing the NEC action. On May 28, 1980, NEC removed the Illinois action to United States District Court for the Central District of Illinois, alleging jurisdiction pursuant to 28 U.S.C. §§ 1331(a) and 1332(a). On the following day, Illinois moved to remand its action to state court, denying the existence of federal subject matter jurisdiction over its claims.

**2.** The RCRA establishes a system of permits and other regulatory measures concerning hazardous waste and solid waste management facilities.

**3.** At the time of the filing of NEC's complaint, the first set of regulations promulgated under the RCRA had yet to become effective. Such regulations were published on May 19, 1980, 45 Fed.Reg. 33418 (May 19, 1980) and, insofar as they relate to NEC's claims, made effective on November 19, 1980. 40 C.F.R. §§ 122–24, 260–65. As of November 19, 1980, NEC's Sheffield facility has been operating pursuant to a federal permit issued under the RCRA. *See* 42 U.S.C. § 6925(e). After November 19, 1980, NEC moved to file an amended complaint setting forth with greater particularity its theory based on the RCRA. That motion remains pending in the district court.

**4.** Teledyne Industries, Inc. is the parent corporation of NEC.

**5.** These provisions comprise a statute entitled: "An Act in Relation to the Prevention and Abatement of Air, Land and Water Pollution." *See* Ill.Rev.Stat. ch. 14, § 11.

On May 29, 1980, the district court heard pending motions in both the NEC and Illinois actions, including Illinois' motion to dismiss and its motion to remand. Both of those motions were denied by the district court without the issuance of a written opinion. The district court that day also consolidated the two actions. On June 20, 1980, Illinois filed a motion requesting that the district court reconsider its denial of Illinois' motions, enter findings in support of its rulings on Illinois' motions, and, in the event reconsideration was denied, certify its order denying Illinois' motions for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). On June 25, 1980, the district court denied Illinois' motion insofar as it sought reconsideration and to obtain the entry of findings,[6] but granted Illinois' request that the district court certify its denials of Illinois' motions for interlocutory appeal pursuant of 28 U.S.C. § 1292(b). In its certification order of June 25, the district court found that the question of whether diversity jurisdiction exists over the two actions was a controlling question of law about which there is a substantial difference of opinion. On July 1, 1980, NEC moved to amend the district court's June 25, 1980 order "so as to certify the issue of federal question jurisdiction as a controlling question of law in addition to the issue of diversity jurisdiction." On July 3, 1980, the district court granted NEC's motion. Illinois filed its request for interlocutory appeal on July 11, 1980. Thereafter, we granted leave to appeal.

## II. *Appellate Jurisdiction.*

Before turning to the substantive issues raised by this appeal, we must address a rather thorny question pertaining to our appellate jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1292(b). Appeals brought pursuant to section 1292(b) must be filed within 10 days of the entry of the certification order, and that requirement is jurisdictional.[7] *E. g., Woods v. Baltimore & Ohio R.R. Co.*, 441 F.2d 407, 408 (6th Cir. 1971). The district court's June 25 order of certification effectively commenced the 10 day period for appeal from the district court's order denying Illinois' motions to dismiss the NEC action and to remand the Illinois action.

The question presented is whether Illinois' appeal was timely filed even though filed more than 10 days after entry of the district court's June 25, 1980 order. Or, stated differently, the question presented is whether the 10 day period for purposes of appeal must be computed from the date of entry of the June 25, 1980 order or may instead be computed from the date of entry of the district court's July 3, 1980 order amending the June 25 order. The answer to this question determines whether the appeal is properly before the Court.

The instant jurisdictional question appears to have arisen from a fundamental

---

**6.** We find it lamentable that the district court declined to supply the parties and this Court with the benefit of the reasoning by which it arrived at its May 29 rulings, especially in view of the district court's own admission that the questions involved are difficult ones.

**7.** 28 U.S.C. § 1292(b) provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it

within ten days after the entry of the order: Provided, however, that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

When we accepted this appeal we were simply exercising that discretion vested with us pursuant to 28 U.S.C. § 1292(b). *See* C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure* § 3929 at 140. Of course, whether we possess appellate jurisdiction over this appeal is not a matter within our discretion. The instant issue concerning our appellate jurisdiction was raised *sua sponte* prior to oral argument, but after the close of briefing. Both parties have addressed themselves to the issue during oral argument and by way of supplemental briefs.

misunderstanding shared by the parties and the district court as to the scope of a section 1292(b) appeal. The parties and the district court apparently interpret section 1292(b) as authorizing interlocutory appeal of specific legal questions, rather than from particular *orders*. The language and purpose of the statute and the applicable law, however, are to the contrary. *Civil Aeronautics Board v. Tour Travel Enterprises, Inc.*, 605 F.2d 998, 1003 n.12 (7th Cir. 1979); *Consolidated Express, Inc. v. New York Shipping Association*, 602 F.2d 494, 501–02 (3d Cir. 1979), *vacated on other grounds*, 448 U.S. 902, 100 S.Ct. 3040, 65 L.Ed.2d 1131 (1980); *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 994–95 (2d Cir.), *cert. denied, Bersch v. Arthur Anderson & Co.*, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975); *see generally* Note, *Interlocutory Appeals in the Federal Courts under 28 U.S.C. § 1292(b)*, 88 Harv.L.Rev. 607, 628–29 (1975). Section 1292(b) permits appeals from *orders* involving "a controlling question of law as to which there is substantial ground for difference of opinion," not just the specific question. *Civil Aeronautics Board v. Tour Travel Enterprises, Inc.*, 605 F.2d at 1003 n.12. When an order is certified for appeal by a district court and appeal is accepted by a court of appeals all questions material to the order are properly before the court of appeals. To view section 1292(b) as allowing review of only the question of law making an order appealable would frustrate the utility of the section 1292(b) appeal process where, for example, the court of appeals affirms the order certified, based upon its agreement with the district court's resolution of the legal question, but fails to reach other questions material to the order that were erroneously decided by the district court. Hence, when the district court in the instant case on June 25, 1980 certified its order denying Illinois' motions, all material questions decided in that order, including the question of whether federal question jurisdiction existed over the cases,

would have been properly before this Court if an appeal had been timely filed and accepted. The July 3, 1980 amendment to the June 25, 1980 order was therefore superfluous.

■ Clearly, this Court may not enlarge the time for filing an appeal pursuant to section 1292(b). Fed.R.App.P. 26(b). However, it is not so clear whether this Court may permit a district court to in effect enlarge the time for appealing from a certified order by vacating and reentering or amending an order of certification so as to arguably recommence the running of the 10 day period.[8] That issue has been grappled with by few courts, all of them outside of this Circuit. *Braden v. University of Pittsburgh*, 552 F.2d 948 (3d Cir. 1977); *In re La Providencia Development Corp.*, 515 F.2d 94 (1st Cir. 1975); *Woods v. Baltimore & Ohio R.R. Co.*, 441 F.2d 407 (6th Cir. 1971); *Borskey v. American Pad & Textile Co.*, 296 F.2d 894 (5th Cir. 1961); *Nakhleh v. Chemical Construction Corp.*, 366 F.Supp. 1221 (S.D.N.Y.1973). None of these cases resolved the precise issue before this Court, and the only principle common to most of the above decisions is that a district court may not reenter a certification order to enlarge the time for appeal when the failure to timely appeal from the original certification order was due solely to mere neglect of counsel. *E. g., Woods v. Baltimore & Ohio R.R. Co.*, 441 F.2d at 408. *But see In re La Providencia Development Corp.*, 515 F.2d at 95. *Nakhleh* and *Borskey* stand for the proposition that reentry of an order of certification will be given effect only if accompanied by reconsideration of some new issue relating to the merits of the order sought to be appealed from. *La Providencia*, on the other hand, implicitly sanctions reentry of a certification order if it will afford the parties a timely appellate decision. The most flexible approach is apparently that endorsed by the Third Circuit in *Braden* where the court gave effect to the

---

**8.** No rule expressly addresses this question. Rule 4(a) of the Federal Rules of Appellate Procedure empowers a district court to enlarge the time for filing an appeal as of right by thirty days upon a showing of excusable neglect. Rule 5 of the Federal Rules of Appellate Procedure, governing interlocutory appeals, contains no comparable provision.

reentry of a certification order upon consideration of the facts surrounding reentry of the certification order and all pertinent rules. While the most salient fact upon which the *Braden* court relied was that no timely appeal from the original certification order was taken due to the district court's failure to afford counsel timely notice of entry of the order, the *Braden* court also relied upon the fact that an appeal from the subsequently entered certification order had not caused the appellee any prejudice. *Braden v. University of Pittsburgh*, 552 F.2d at 954–55.

The purpose underlying section 1292(b) does not appear to figure prominently in any of the above cited decisions. In the absence of any definitive rule supplying a resolution of the sort of issue before us, we believe that the focus of our inquiry must be the purpose to be served by section 1292(b). Section 1292(b) was enacted as one of the few exceptions to the "final judgment" rule for the important and salutary purposes of shortening the length of litigation and avoiding unnecessary work and expense by the courts and litigants. *Hearings on H.R. 6238 and H.R. 7260 Before Subcomm. No. 3 of House Comm. on the Judiciary*, 85th Cong., 2d Sess. at 14 (1958) (hereinafter cited as "House Hearings"); *see generally* Note, *Interlocutory Appeals in the Federal Courts under 28 U.S.C. § 1292(b)*, 88 Harv.L.Rev. at 610–12. In short, section 1292(b) was enacted to foster greater judicial efficiency. The procedural mechanism enacted to further this goal was the dual requirement that an appeal brought under section 1292(b) be both certified by the district court as likely to "materially advance the termination of the litigation" and, in its discretion, acceptable to the court of appeals for interlocutory appeal. *See House Hearings* at 14–15. As to the 10 day requirement, the only apparent Congressional intention was that section 1292(b) appeals be expeditiously brought so that the delay attendant an interlocutory appeal would be minimized. S.Rep. 2434, 85th Cong., 2d Sess. (1958). *See generally* C. Wright, A. Miller, E. Cooper *Federal Practice and Procedure* § 3929 at 154.

■ The *Nakhleh* court's rigid approach to the question of the appropriateness of an appeal from a recertified order does not permit a considered determination of whether appeal would be consonant with the purposes of section 1292(b). Accordingly, we decline to follow that approach. Instead we find that as long as a timely appeal from a recertified order will further the purpose of section 1292(b), taking into consideration all events transpiring between the entry of certification orders that bear upon the utility of a section 1292(b) appeal, the appeal should not be dismissed for want of appellate jurisdiction. *See* C. Wright, A. Miller, and E. Cooper *Federal Practice and Procedure* § 3929 at 154–55; Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b)*, 88 Harv. L.Rev. at 615–16. In this connection, the fact that a district court recertifies an order should be worthy of some weight by a court of appeals. As stated, whether to grant any timely section 1292(b) appeal is always a matter within the discretion of a court of appeals. In the context of an appeal pursuant to the recertified order, a court of appeals should be especially alert to any undue prejudice to a party when exercising that discretion.

■ Having established the appropriate inquiry, we find that the certification order of the district court of July 3, 1980 should be given effect and accordingly we find Illinois' appeal to have been timely filed. The district court's second certification order indicates that each of the jurisdictional bases of the Illinois and the NEC cases involved a "controlling question of law as to which there is a substantial ground for difference of opinion." Being jurisdictional questions, their resolution on appeal perforce promises to materially advance the ultimate resolution of this litigation and avoid unnecessary expense. *See generally McCorkle v. First Pennsylvania Banking & Trust Co.*, 459 F.2d 243, 251 (4th Cir. 1972); Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b)*, 88 Harv. L.Rev. at 611–12. The potential benefit to

be derived from this section 1292(b) appeal is not diminished when weighed against the delay between the expiration of the time for appeal from the district court's initial certification order and the filing of Illinois' appeal. During that period of approximately a week, no events transpired that would render this interlocutory appeal less fruitful than if it had been timely brought from the initial certification order.

Further, the facts of this case are somewhat akin to those of *Braden* in that it was not wholly unreasonable for Illinois to believe that it had 10 days from the entry of the July 3 order in which to appeal. *Braden v. University of Pittsburgh*, 552 F.2d at 955. Assumedly, Illinois would have filed its appeal within 10 days of the June 25 order if NEC had not requested an amendment to that order during the 10 day period. The most prudent course for Illinois to have followed would have been to have done so anyway. However, as stated, Illinois apparently misunderstood the scope of a section 1292(b) appeal. Because the misunderstanding was somewhat encouraged by the district court's reentry of the certification order in amended form, we find that it was not unreasonable for Illinois to consider the applicable 10 day period to commence on the date of entry of the amended order of certification.

Finally, we deem it significant that NEC was not prejudiced by Illinois' failure to file its appeal within 10 days of the district court's June 25, 1980 order. *See id.* at 955. Indeed, NEC has not urged dismissal of this appeal by reason of Illinois' failure to do so.

In sum, we find that we have jurisdiction to entertain Illinois' appeal from the district court's order of May 29, 1980 because Illinois' appeal was filed within 10 days after the district court's certification order of July 3, 1980.

III. *The Illinois Action.*

■ We now turn to a substantive review of the district court's May 29, 1980 order, addressing first its denial of Illinois' motion to remand the Illinois action to state court. Removal of the Illinois action was accomplished pursuant to the general removal statute, 28 U.S.C. § 1441.[9] The two requisites of removal are that the action was properly commenced in state court and that it could have been originally commenced in federal court. *Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co.*, 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed.2d 671 (1922). Only the existence of the latter requisite is disputed herein. As stated, NEC asserts that the district court has jurisdiction over the Illinois action by virtue of its federal question jurisdiction and its diversity jurisdiction.

A. *Federal Question Jurisdiction.*

■ Jurisdictional questions are answered by reference to the time of the filing of an action, and the party asserting jurisdiction bears the burden of establishing its existence. *E. g., International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). The specific principles applicable to pleading federal question jurisdiction are well-settled. Federal question jurisdiction is properly invoked when a plaintiff pleads a claim that "arises under"

9. 28 U.S.C. § 1441 provides:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

federal law. 28 U.S.C. § 1331. A claim "arises under" federal law when federal law supplies an essential element of the claim. *E. g., Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). Additionally, the federal claim must generally appear on the face of the complaint, unaided by any other pleadings, including a removal petition. *E. g., Arkansas v. Kansas & Texas Coal Co.,* 183 U.S. 185, 188, 22 S.Ct. 47, 48, 46 L.Ed. 144 (1901). *American Invs-Co. Countryside, Inc. v. Riverdale Bank,* 596 F.2d 211, 216 (7th Cir. 1979). A qualification of this so-called "well-pleaded complaint" rule for determining jurisdiction is that a plaintiff may not deny a defendant his right to a federal forum by artfully disguising an essentially federal law claim in terms of state law. *Jones v. General Tire & Rubber Co.,* 541 F.2d 660, 664 (7th Cir. 1976).

■ Whether the Illinois action "arises under" federal law is a question that need not long detain us. Illinois' complaint on its face asserts only state law claims. NEC's argument in this regard is, briefly stated, that questions pertaining to provisions of the RCRA and other federal law are inextricably bound up with Illinois' claim and that Illinois has artfully pleaded its claim to avoid any references to federal law.[10] Illinois' claims, however, are predicated upon state law that at most incorporates federal law in certain tangential respects. *See, e. g.,* Ill.Rev.Stat. ch. 111½, §§ 1003(g) and 1012(f).[11] Such state law incorporation of federal law does not fairly allow Illinois' state law claims to be construed as essentially federal in character. *See, e. g., United Air Lines, Inc. v. Division of Industrial Safety of the Department of Industrial Relations,* 633 F.2d 814, 816 (9th Cir. 1980). *See also Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp.,* 348 U.S. 437, 450, 75 S.Ct. 489, 495, 99 L.Ed. 510 (1955), *overruled on*

---

10. Significantly, however, NEC does not dispute that the RCRA does not pre-empt the body of state law upon which Illinois' claims are based insofar as they seek to impose upon the Sheffield facility standards more stringent than does the RCRA. *See* 42 U.S.C. § 6929. *See also Rettig v. Arlington Heights Federal Savings & Loan Association,* 405 F.Supp. 819, 823 (N.D.Ill.1975).

11. These provisions provide as follows:
 § 1003. Definitions
 \* \* \* \* \* \*
 (g) "Hazardous waste" means a waste, or combination of wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may cause or significantly contribute to an increase in mortality or an increase in serious, irreversible, or incapacitating reversible, illness; or pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed, *and which has been identified, by characteristics or listing, as hazardous pursuant to Section 3001 of the Resource Conservation and Recovery Act of 1976, P. L. 94–580, or pursuant to Agency guidelines consistent with the requirements of this Act and Board regulations.* Hazardous waste does not include municipal waste. (footnote omitted) (emphasis supplied).
 \* \* \* \* \* \*
 § 1012. Acts prohibited.
 No person shall:

\* \* \* \* \* \*
(f) Cause, threaten or allow the discharge of any contaminant into the waters of the State, as defined herein, including but not limited to, waters to any sewage works, or into any well or from any point source within the State, without an NPDES permit for point source discharges issued by the Agency under Section 39(b) of this Act, or in violation of any term or condition imposed by such permit, or in violation of any NPDES permit filing requirement established under Section 39(b), or in violation of any regulations adopted by the Board or of any order adopted by the Board with respect to the NPDES program.
*No permit shall be required under this subsection and under Section 39(b) of this Act for discharge for which a permit is not required under the Federal Water Pollution Control Act Amendments of 1972 (P.L. 92–500) and regulations pursuant thereto.*
*For all purposes of this Act, a permit issued by the Administrator of the United States Environmental Protection Agency under Section 402 of the Federal Water Pollution Control Act Amendments of 1972 (P.L. 92–500) shall be deemed to be a permit issued by the Agency pursuant to Section 39(b) of this Act.* However, this shall not apply to the exclusion from the requirement of an operating permit provided under Section 13(b)(i). (footnotes omitted) (emphasis supplied).

*other grounds, Smith v. Evening News Association,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). Accordingly, we find there exists no federal question jurisdiction over the Illinois action.[12]

## B. *Diversity Jurisdiction.*

 Removal was nonetheless providently allowed if the district court has diversity jurisdiction over the Illinois action. Diversity jurisdiction extends to suits between parties whose state citizenship is completely diverse. 28 U.S.C. § 1332.[13] NEC is a California corporation with its principal place of business located within Kentucky, and is consequently a citizen of both California and Kentucky for diversity purposes. 28 U.S.C. § 1332(c). States are not considered "citizens" for purposes of diversity jurisdiction and therefore diversity jurisdiction may not be asserted over an action to which a state is a real party in interest. *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945); *State Highway Commission v. Utah Construction Co.,* 278 U.S. 194, 199–200, 49 S.Ct. 104, 106, 73 L.Ed. 262 (1929); *Fitts v. McGhee,* 172 U.S. 516, 529, 19 S.Ct. 269, 274, 43 L.Ed. 535 (1899). When a state official is a party to a proceeding over which diversity jurisdiction is alleged, whether the respective state is itself the real party in interest is a question to be determined from the "essential nature and effect of the proceeding." *Ford Motor Co. v. Department of Treasury,* 323 U.S. at 464, 65 S.Ct. at 350.

 Thus, the issue to be resolved to ascertain if diversity jurisdiction exists over the Illinois action is whether that action is, in essence, brought by the State of Illinois. If so, the parties to that action are not of diverse "citizenship" within the meaning of

28 U.S.C. § 1332. That Scott brought the Illinois action in his official capacity on behalf of the State of Illinois is abundantly clear from an examination of the complaint filed in the Illinois action. *See State Highway Commission of Wyoming v. Utah Construction Co.,* 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262; *Fitts v. McGhee,* 172 U.S. 516, 19 S.Ct. 269, 43 L.Ed. 535; *Olsen v. Doerfler,* 225 F.Supp. 540, 541 (E.D.Mich.1963). We therefore find that the district court has no jurisdiction over the Illinois action pursuant to 28 U.S.C. § 1332.

The postulate of NEC's argument that the district court possesses diversity jurisdiction over the Illinois action is that Scott in his individual capacity is the real party plaintiff to that action because his commencement of the action constitutes an act outside the scope of his lawful authority. That postulate has its theoretical origins in the Supreme Court's decision in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and was apparently first cast in the form relied upon by NEC in *Ohio ex rel. Seney v. Swift Co.,* 270 F. 141 (6th Cir.), *cert. denied,* 257 U.S. 633, 42 S.Ct. 47, 66 L.Ed. 407 (1921). *Ex parte Young* is pertinent to NEC's argument inasmuch as the Court ruled therein that the eleventh amendment is no bar to a suit seeking prospective relief from a state official if the official has exercised his authority unconstitutionally. *Ex parte Young,* 209 U.S. at 159–60, 28 S.Ct. at 453–54. Relying on that holding of *Ex parte Young, Seney* held that an action brought by a state official to enforce a statute alleged by the defendant to be unconstitutional can only be deemed brought by the official in his individual capacity. *Ohio ex rel. Seney v. Swift Co.,* 270 F. at 150–52. Therefore, the *Seney* court reasoned, the rule of law providing

---

12. Recently, the United States District Court for the Middle District of Louisiana remanded a private action brought against an operator of a hazardous waste disposal facility that asserted violations of Louisiana law. *McCastle v. Rollins Environmental Services,* 514 F.Supp. 936 (M.D.La., 1981) (memorandum opinion), *motion for reconsideration denied,* (June 5, 1981) (memorandum opinion). In *McCastle* the dis-

trict court rejected arguments in support of federal question jurisdiction based on the RCRA similar to those urged by NEC herein. We note our concurrence with the reasoning of the *McCastle* opinions.

13. It is undisputed that the Illinois action satisfies the $10,000 amount in controversy requirement imposed by section 1332.

that states are not citizens for purposes of 28 U.S.C. § 1332 did not preclude its assertion of diversity jurisdiction over the action. *Id.*

We decline to follow the reasoning of *Seney.* The fiction created by *Ex parte Young*—*i. e.,* that a constitutional claim for prospective relief against a state official is not an action against the state for eleventh amendment purposes—has never been applied by the Supreme Court or this Circuit to determine whether a state is a party to an action for purposes of diversity jurisdiction. The proposition advanced by the *Seney* court has apparently been arguably embraced by but one reported decision, *Mouton v. Sinclair Oil & Gas Co.,* 410 F.2d 717 (5th Cir. 1969), *cert. denied,* 398 U.S. 957, 90 S.Ct. 2163, 26 L.Ed.2d 542 (1970), while it has been generally criticized. *Eure v. NVF Co.,* 481 F.Supp. 639, 641 (E.D.N.C.1979); *National Market Reports, Inc. v. Brown,* 443 F.Supp. 1301, 1305 n.6 (S.D.W.Va.1978); *State Tax Commission v. Union Carbide Corp.,* 386 F.Supp. 250, 253 n.7 (D. Idaho 1974). *See also Geeslin v. Merriman,* 527 F.2d 452 (6th Cir. 1975).

The fiction of *Ex parte Young,* which merits that decision being considered a "landmark in constitutional law," C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure,* § 4231 at 359,[14] was created to further important interests wholly inapposite to Congress' grant of federal jurisdiction pursuant to 28 U.S.C. § 1332.[15] The *Seney* decision does not reveal, and we cannot conceive of, any compelling reason to employ the fiction of *Ex parte Young* to find diversity jurisdiction over actions such as the Illinois action. Concededly, to decline to so apply that fiction to questions of diversity jurisdiction produces the anomalous result that a state official alleged to have acted in an unconstitutional fashion may be considered a "state actor" for some purposes and not for others. However, we do not find that fact to weigh in as persuasive support for NEC's position. Indeed, a similar anomaly was sanctioned in *Ex parte Young* in that the Court there found a state official alleged to have performed his duties in an unconstitutional manner to not be a "state actor" for certain eleventh amendment purposes, but to be a "state actor" for fourteenth amendment purposes.

Therefore, we find that the district court is without jurisdiction pursuant to 28 U.S.C. § 1332 to decide the Illinois action. As a result, we find that removal of the Illinois action to the district court was improvidently had. The Illinois action shall be remanded to the district court only for the purposes of entertaining a request by Illinois for costs, *see* 28 U.S.C. § 1447(c), and to enter an order remanding this cause to state court.

IV. *The NEC Action.*

The NEC action also presents jurisdictional questions pertaining to both diversity and federal question jurisdiction. Before turning to those questions, however, we must address the separate and distinct jurisdictional question of constitutional dimension of whether the NEC action presents to the district court an actual controversy for resolution. We find that it does not.[16]

As already stated, jurisdictional matters are determined by reference to the time when the action was commenced, and the proponent of federal jurisdiction bears the burden of establishing the existence of such jurisdiction. *International Harvester Co. v. Deere & Co.,* 623 F.2d at 1210. The test to be applied to determine the exist-

---

**14.** *See also* Baker, *Federalism and the Eleventh Amendment,* 48 U.Colo.L.Rev. 139, 157–58 (1977); L. Tribe *American Constitutional Law* at 144–47 (1978).

**15.** *Ex Parte Young* was born of the need to enforce the United States Constitution against state officials, *e. g.,* C. Wright, H. Miller, and E. Cooper, *Federal Practice and Procedure* § 4231 at 352, while 28 U.S.C. § 1332 was enacted to provide a neutral forum for suits between citizens of different states. *Pease v. Peck,* 59 U.S. (18 How.) 595, 15 L.Ed. 518 (1856).

**16.** Unfortunately, this issue was not adequately addressed by the parties. We, of course, may not ignore any doubts as to our jurisdiction, however they may arise. *Association of American Medical Societies v. Califano,* 569 F.2d 101, 111 (D.C.Cir.1977).

ence of an actual controversy in the context of a declaratory judgment action is "whether . . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). *Accord, Lake Carriers' Association v. MacMullan*, 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972). While this test may be easily stated, it is often difficult to apply to a given factual pattern. However, we easily conclude that the NEC action presented no actual controversy when filed. *See Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952).

At the time NEC's complaint was filed, the alleged controversy between it and defendant Scott was based entirely upon his April 22, 1980 announcement that he intended at some future date to bring an action against NEC alleging violations of Illinois' environmental protection laws. Of course, a plaintiff need not always await the actual commencement of enforcement proceedings to challenge the authority under which those proceedings would be brought. *E. g., Babbitt v. United Farm Workers*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308–09, 60 L.Ed.2d 895 (1979); *Lake Carriers' Association v. MacMullan*, 406 U.S. at 507–08, 92 S.Ct. at 1755–56. However, for such an action to present a justiciable controversy the threat of enforcement must have immediate coercive consequences of some sort upon the plaintiff. *Id.* at 508 n.12, 92 S.Ct. at 1756, n.12; *Poe v. Ullman*, 367 U.S. 497, 508, 81 S.Ct. 1752, 1758, 6 L.Ed.2d 989 (1961); *cf. Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. at 245, 73 S.Ct. at 241.

The only allegation in NEC's complaint that Scott's threatened action is causing immediate consequences to NEC is its allegation that existing and potential customers and potential investors are being lost. When threatened governmental action causes immediate business costs, an "actual controversy" certainly exists. *Bethlehem Steel Corp. v. United States Environmental Protection Agency*, 536 F.2d 156, 164 (7th Cir. 1976). Uncertain or speculative business injury, on the other hand, will not support a finding that an "actual controversy" exists. *Id.* Our careful examination of the record in this case reveals not a shred of evidence in support of NEC's allegation of immediate business injury. Nor has NEC even alluded to this allegation as a basis for jurisdiction during the course of this appeal. Illinois having challenged NEC's assertion that jurisdiction exists over its action, it was incumbent upon NEC to support its jurisdictional allegations of fact by competent evidence. *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979). *See generally* 1 *Moore's Federal Practice* ¶ 0.06[4] at 627. NEC has not done so with respect to its allegation that Scott's threatened action caused it business injury, and therefore we find that NEC has failed to meet its burden as to this jurisdictional allegation.

The facts of this case are remarkably similar to those in *Wycoff*. In that case, a business engaged in the transportation of film between points within the State of Utah filed an action against the Utah Public Service Commission seeking declaratory and injunctive relief. The *Wycoff* plaintiff's claim was that because its operations were conducted pursuant to authority from the Interstate Commerce Commission, the court should declare those operations immune from Utah's applicable regulatory scheme. The facts in *Wycoff* indicate that the plaintiff's fear of enforcement of that scheme was by no means unfounded. However, that threat did not give rise to any immediate coercive consequences. The Supreme Court ruled that the *Wycoff* plaintiff's claim presented no actual controversy when it merely sought "to *guard against the possibility* that said Commission would attempt to prevent respondent from operating under its certificate from the Interstate Commerce Commission." *Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. at 244, 73 S.Ct. at 240 (emphasis in origi-

nal). *See also American Invs-Co. Country-side, Inc. v. Riverdale Bank*, 596 F.2d at 216. Similarly, the NEC action was filed merely to immunize it against an anticipated enforcement action by Scott when that threatened action had no immediate consequences to NEC so as to give rise to an "actual controversy."

The *Lake Carriers'* case is also illustrative of the absence of an actual controversy between NEC and Scott at the time of the filing of this action. In *Lake Carriers'*, the plaintiffs sought a declaration that a Michigan statute regulating sewage discharge impinged upon their federal rights. At the time the action was commenced, the state officials had yet to seek compliance with the statute by way of an enforcement proceeding. But because state officials were actively employing the threat of future enforcement to obtain current compliance with certain provisions of the statute, the Court found the controversy presented to be sufficiently real and immediate. *Lake Carriers' Association v. MacMullan*, 406 U.S. at 507–08, 92 S.Ct. at 1755–56. *Cf. Bethlehem Steel Corp. v. United States Environmental Protection Agency*, 536 F.2d at 164. NEC did not allege that Scott's threatened action coerced it into compliance with any statute or regulation. Indeed, NEC was operating the Sheffield facility when it commenced its action and it alleges that its operation of the facility has at all times been in full compliance with all applicable Illinois law.

Finally, that NEC's action seeks merely an advisory opinion is perhaps best demonstrated by an examination of NEC's prayer for relief, which requests that the district court "enter a judgment declaring that so long as plaintiff complies with The Resource Conservation and Recovery Act of 1976, with all valid State and local laws, and with the regulations, licenses and permits issued by said governmental authorities, plaintiff's operation of the ... [Sheffield facility] is lawful and may be contin-ued." By requesting this relief, NEC does not seek to have the district court declare the rights of parties involved in a concrete controversy, but simply seeks to have the district court engage in a tautologous exercise.

\* \* \*

Since NEC's complaint presented no actual controversy when filed, the district court should have dismissed the action. This Court having so ruled, it is not necessary for us to reach the question of whether the district court had subject matter jurisdiction over the NEC action pursuant to its federal question or diversity jurisdiction. Because, however, the subsequent filing of the Illinois action has caused the controversy between NEC and Illinois to ripen into an "actual controversy" that apparently will imminently present itself to the district court, we feel compelled to comment upon the question of subject matter jurisdiction over NEC's claims viewed in light of the filing of the Illinois action.

NEC's federal law claims are that the Illinois action seeks to work an unconstitutional taking of NEC's property and that its compliance with the RCRA immunizes it from the claims asserted in the Illinois action. Illinois argues that these claims do not "arise under" federal law because they are without meaning except insofar as they constitute defenses to state law claims. We agree.

It is well-settled that the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, confers no additional jurisdiction upon the federal courts. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950). When a declaratory judgment plaintiff asserts a claim that is in the nature of a defense to a threatened or pending coercive action, the character of the threatened or pending coercive action determines whether federal question jurisdiction exists over the declaratory judgment action. *Public Service Commission of Utah v. Wycoff Co.*,[17] 344 U.S. at

---

17. NEC correctly points out that *Wycoff's* discussion of federal question jurisdiction is dictum since the *Wycoff* Court determined earlier in its opinion that the case presented no "actual controversy." NEC further argues that the *Wycoff* dictum and the progeny it spawned, *e.*

248, 73 S.Ct. at 242; *United Air Lines v. Division of Industrial Safety of the Department of Industrial Relations*, 633 F.2d at 816–17; *Milprint, Inc. v. Curwood, Inc.*, 562 F.2d 418, 421–22 (7th Cir. 1977). In this manner, the well-pleaded complaint rule of pleading federal question jurisdiction is·given effect in the context of declaratory judgment actions.[18] *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. at 673–74, 70 S.Ct. at 880. *See generally* Field, *The Uncertain Nature of Federal Jurisdiction* 22 Wm. & Mary L.Rev. 683, 689 (1981); Cohen, *The Broken Compass: The Requirement that a Case Arise "Directly" Under Federal Law*, 115 U.Pa.L.Rev. 890, 909 (1967).

▮ Viewed in the light cast by these jurisdictional principles, NEC's purported federal law claims are illuminated as claims that do not "arise under" federal law. Rather, NEC's claims derive their meaning and substance wholly from Illinois' once threatened, and now pending, action, an action that we have already determined sets forth exclusively state law claims. NEC's claims implicate federal law only to the extent federal law affords NEC a defense to the Illinois action.[19] Consequently, NEC's complaint presents no claim that "arises under" federal law.

The question of whether the district court has diversity jurisdiction over the NEC action is controlled by our discussion in Part II–B *supra*. As support for the district court's asserted jurisdiction over the NEC action, NEC again advances the reasoning

underlying the *Seney* decision rejected by us in Part II–B *supra*. NEC's action against Scott is essentially one against the State of Illinois; therefore, no diversity of citizenship exists between the parties to the NEC action. *See, e. g., State Highway Commission of Wyoming v. Utah Construction Co.*, 278 U.S. at 199–200, 49 S.Ct. at 106; *Fitts v. McGhee*, 172 U.S. at 529, 19 S.Ct. at 274; *Olsen v. Doefler*, 225 F.Supp. at 541.

Lastly, in view of the foregoing discussion, we do not reach Illinois' abstention argument with respect to the·NEC action or NEC's motion to strike that argument from appellate consideration because allegedly not set forth in Illinois' initial brief to this Court.

## V. *Conclusion*

We conclude that the district court erred both when it denied Illinois' motion to remand its action and when it denied Illinois' motion to dismiss the NEC action. The Illinois action is remanded to the district court only so that it may consider any request by Illinois for costs pursuant to 28 U.S.C. § 1447(c) and for entry of an order remanding the action to the appropriate state court. As to the NEC action, the district court is instructed to enter an order dismissing that action for want of jurisdiction as explained in this opinion. Dismissal of that action is, of course, without prejudice. *E. g., Exchange National Bank of Chicago v. Touche Ross & Co.*, 544 F.2d

*g., United Air Lines v. Division of Industrial Safety of the Department of Industrial Relations*, 633 F.2d at 816–17; *First Federal Savings & Loan Association of Boston v. Greenwald*, 591 F.2d 417, 423 n.8 (1st Cir. 1979); *Milprint, Inc. v. Curwood, Inc.*, 562 F.2d at 421–22; *Rath Packing Co. v. Becker*, 530 F.2d 1295, 1305–06 (5th Cir. 1975) *aff'd*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), misconstrue the scope of federal question jurisdiction. *See Braniff International, Inc. v. Florida Public Service Commission*, 576 F.2d 1100, 1104–06 (5th Cir. 1978). We disagree. The principles embodied in the *Wycoff* dictum are fully consistent with the logic of the holding in *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. at 671, 70 S.Ct. at 879, *see Milprint, Inc. v. Curwood Co.*, 562 F.2d at 421–22, and remain

viable in this Circuit. *Precision Shooting Co. v. Allen*, 646 F.2d 313, 315 (7th Cir. 1981).

**18.** We find it insignificant that NEC also seeks injunctive relief. NEC's claim for injunctive relief is entirely premised upon the success of its claim for declaratory relief, seeking only to give effect to the declaratory relief sought. Nor do we reach any issue relating to the propriety of NEC's claim for injunctive relief.

**19.** Accordingly, the NEC action is distinguishable from actions brought to challenge threatened or pending enforcement of state law where such enforcement implicates federal rights apart from being a possible defense to such enforcement. *See, e. g., Rath Packing Co. v. Becker*, 530 F.2d at 1305–06.

1126, 1130–31 (2d Cir. 1976). Accordingly, the order of the district court is,

REVERSED AND REMANDED.