**Gary DOTSON, Plaintiff,**

v.

**James H. DONNEWALD, Treasurer, State of Illinois, and Neil F. Hartigan, Attorney General, State of Illinois, Defendants.**

**No. 85 C 7335.**

United States District Court, N.D. Illinois, E.D.

Nov. 14, 1985.

Warren Lupel, Chicago, Ill., for plaintiff.

Kathleen Kreisel, Gladys Stevens, Asst. Attys. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

In this action, plaintiff Gary Dotson seeks a declaratory judgment that the Illinois Criminal Victims' Escrow Account Act, Ill.Rev.Stat., ch. 70, ¶¶ 401–410 (1982), may not be applied to him without violating the ex post facto clauses of the United States Constitution, Article I, Section 9, Clause 3 and Article I, Section 10, Clause 1. The named defendants are James H. Donnewald, the Illinois state treasurer, and Neil F. Hartigan, Illinois state attorney general. The matter is currently before the court on the motion of defendants to dismiss for failure to allege an actual controversy, or, alternatively, to state a claim upon which relief can be granted. For the reasons set forth herein, the motion is granted.

### Facts

Plaintiff was indicted and convicted for the crime of rape and aggravated kidnapping against a certain Cathleen Crowell, now known as Cathleen Crowell Webb. The crime allegedly took place on the evening of July 9, 1977. On or about March 14, 1985, Cathleen Webb confessed to agents of the Cook County State's Attorney's Office that she had fabricated her original testimony, and that plaintiff was innocent of the crime for which he was convicted. The recantation resulted, among other things, in a commutation of plaintiff's sentence to time served plus three years mandatory supervised release.

Webb's recantation was nationally televised and reported extensively in the press and media. So were plaintiff's continued efforts to clear his name. After plaintiff's release from prison, he entered into an agreement with authors in which he granted certain literary rights to his life story. Plaintiff is also involved in negotiations concerning a film depiction of his life story, including the events surrounding his false accusation, subsequent imprisonment, and eventual release.

Two months subsequent to plaintiff's conviction and about 26 months after his alleged crime occurred, the Illinois Criminal Victims' Escrow Account Act, Ill.Rev.Stat., ch. 70, ¶¶ 401–410, went into effect. That Act provides a mechanism whereby commercial proceeds from crimes resulting in death or physical injury will be made available to the victims of the crimes. The pertinent language of the statute reads as follows:

Any person who has been charged with or convicted of a crime in this State, involving a victim as described in Section 2.3, who contracts with a person, or the representative or assignee of such person, with respect to the depiction of the crime in a movie, book, magazine article, radio or television production, or live presentation of any kind, or with respect to that person's thoughts, feelings, opinions, or emotions regarding the crime, shall file a copy of such contract with the Treasurer. The person with whom the person charged or convicted has contracted shall pay over to the Treasurer any money which would otherwise, by terms of the contract, be owing to the person charged or convicted or his representatives. The Treasurer shall establish by deposit, within 3 days of receipt of such moneys, an escrow account in the name of the person charged or convicted for the benefit of and payable to any victim of crimes committed by such person. A victim who brought a civil action within 2 years of the date of the establishment of the escrow account shall be entitled to an amount ... equal to the amount of an

unsatisfied judgment or a partially satisfied judgment against the person or his representative entered in a court of competent jurisdiction in an action arising out of a crime committed by the person. Ill.Rev.Stat., ch. 70, ¶ 403. If no civil actions are pending against the charged or convicted criminal within two years of the time the account is established, the funds shall be released to the convicted or charged person. *Id.* at ¶ 406.

On July 29, 1985, an amendment to the aforesaid Act was passed by a majority of the State legislature. Senate Bill 1289. This amendatory legislation would have added language to the above statute to prohibit the escrow account funds from ever becoming the property of the purported criminal, and providing instead that the funds after two years be released into a Violent Crime Victims' Assistance Fund to be established in the State Treasury.

On August 16, 1985, Governor James Thompson signed Bill 1289 but returned it to the General Assembly with specific recommendations for change. Under Illinois law, the bill is considered in the same manner as a vetoed bill, ILL. CONST., art. 4, § 9(e), and will not take effect unless and until both houses of the Illinois legislature vote to accept the Governor's recommendations for change, and the Governor certifies his acceptance upon representation. None of these contingencies has occurred, and the amendatory legislation is not law.

Based on public statements given by certain state legislators, plaintiff and some of the entities with whom he is contracting believe that the state "may seek to enforce" the Escrow Account Statute against him. Plaintiff brought the present action to declare the statute as applied to him ex post facto, and thus to declare any such attempt at enforcement unconstitutional.

### Case or Controversy

[1] Defendants' chief argument, and one which this court finds dispositive, is that plaintiff has failed to allege the existence of an actual "case or controversy" within the Article III jurisdiction of this court. In his response memorandum, plaintiff concedes that the applicability of the amendatory legislation is not yet ripe for decision, and seeks relief only with respect to the applicability of the statute as enacted in 1979. Plaintiff nowhere alleges, however, that defendants have enforced or even attempted to enforce the provisions of that Act to his detriment. Plaintiff does allege that public statements by state legislators lead him to believe in such a possibility, but nowhere alleges the contents of these statements, the dates on which they were allegedly made, or the persons making the statements.

■ Article III of the Constitution limits the exercise of judicial power to "cases" and "controversies." *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 239, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937); *J.N.S., Inc. v. State of Indiana*, 712 F.2d 303, 305 (7th Cir.1983). This limitation applies to actions brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, just as it does for actions seeking traditional injunctive relief.

■ Many years ago, the Supreme Court framed the test for the justiciability of a declaratory action: whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). A mere "threat of enforcement of state law" is not justiciable unless the threat presents "immediate coercive consequences" or "immediate business costs." *Alcan Aluminum, Ltd. v. Department of Revenue*, 724 F.2d 1294, 1298 (7th Cir.1984); *Nuclear Engineering Co. v. Scott*, 660 F.2d 241, 251–52 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982). In other words, a litigant may not invoke the power of a federal court to pass upon the constitutionality of a statute simply because an actual controversy may or even will occur in the future: the controversy must presently exist in fact. *J.N.S., Inc.*, 712 F.2d at 305.

Plaintiff argues that the pleadings demonstrate a "sufficient immediacy and reality" by virtue of his allegations that he is engaged in ongoing film and literary negotiations, that threats of enforcement have been publicly made, and that certain of the entities with whom he is negotiating believe the statute will be applied to him. In *Nuclear Engineering Co.*, the Seventh Circuit made clear that when threatened governmental action causes immediate business costs, an "actual controversy" exists sufficient to support Article III jurisdiction. 660 F.2d at 252. The Court also stressed, however, that mere allegations of uncertain or speculative business injury are not enough; where the jurisdiction of the court is challenged as a factual matter, the party invoking jurisdiction must support the jurisdictional allegations of the complaint by competent evidence. *Id.* (citing *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1983).

 In this case, plaintiff has responded to the defendants' motion to dismiss simply by relying on the allegation that he and others "believe" the state will enforce the 1979 statute against him. Plaintiff nowhere alleges that parties with whom he is negotiating are refusing to do business with him or are paying over to the state monies properly owed to him. Plaintiff alleges no "immediate coercive consequences" as required by *Nuclear Engineering* and provides no factual allegations to bolster his suggestion of "immediate business costs." A litigant in federal court must demonstrate an injury which is "real, not imaginary; concrete, not abstract; apparent, not illusory; and demonstrable, not speculative." *Myron v. Chicoine*, 678 F.2d 727, 730 (7th Cir.1982). Plaintiff's conclusory allegations are insufficient to meet this burden.

Even were plaintiff able to allege immediate business costs, it is highly questionable whether the alleged statements by public legislators are sufficient to constitute a threat of enforcement. State legislators do not enforce the provisions of the Act, nor are they parties to this action.

Ordinarily, a reasonable apprehension of a justiciable controversy must be inspired by the *defendants'* actions before jurisdiction will be held to exist. *See, Crown Drug Co., Inc. v. Revlon, Inc.*, 703 F.2d 240, 243 (7th Cir.1983). While plaintiff's name was apparently mentioned in the legislative debates over the amendatory legislation, that in itself does not indicate that the named defendants intend to enforce the old Act against plaintiff.

Accordingly, the defendants' motion to dismiss is granted, and the action is dismissed for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(2). Dismissal is by definition without prejudice to a future action should an actual controversy arise. The November 18, 1985 status date is stricken.

It is so ordered.