881 F.2d 125
 14 Fed.R.Serv.3d 262
 Martha E. MYLES, Administratrix of the Estate of Jennifer
Michelle Edwards, Deceased, Plaintiff-Appellee,
v.
Henry Lucius LAFFITTE, M.D.; Thomas Baker Warren, M.D.;
Doctors Laffitte and Warren, P.A., Defendants-Appellants.
 No. 88-1345.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 6, 1989.
Decided Aug. 3, 1989.
 
 Monteith P. Todd (William C. Hubbard, Nelson, Mullins, Riley & Scarborough on brief), for defendants-appellants.
 Ellis I. Kahn (Solomon, Kahn, Smith & Baumil on brief), for plaintiff-appellee.
 Before RUSSELL, PHILLIPS, and MURNAGHAN, Circuit Judges.
 MURNAGHAN, Circuit Judge:
 
 
 1
 On February 17, 1987, Martha Myles filed diversity actions in the United States District Court for the District of South Carolina for wrongful death and pain and suffering arising from an alleged incident of medical malpractice resulting in the death of her daughter, Jennifer Michelle Edwards. The defendants live and practice medicine in Allendale County, South Carolina, and all the disputed treatment transpired there. The decedent was also a resident of Allendale County, as was her mother at the time the treatment was rendered. On the advice of her attorney, Myles moved to Augusta, Georgia in August of 1986, so as to invoke federal diversity jurisdiction for her claims.
 
 
 2
 The defendants moved to dismiss Myles' actions for lack of jurisdiction. On August 8, 1988, the district court denied the motion. Although the court specifically found that Myles' motive for moving to Georgia was to establish diversity jurisdiction, it also found that Myles was a bona fide resident of Georgia at the time the suits were filed, thus satisfying the prerequisites of diversity jurisdiction. The court rejected the defendants' contentions that the residence of the decedent or the citizenship of the beneficiaries of a wrongful death action[1] should be controlling for purposes of determining diversity. It took the position that the residence of the plaintiff, as personal representative of the estate, was what mattered, and that whether change of the plaintiff's residence was bona fide was what controlled for diversity purposes, irrespective of one's view of the motives. Acknowledging the controversy surrounding the question of whose citizenship controlled, see, e.g., Krier-Hawthorne v. Beam, 728 F.2d 658 (4th Cir.1984), the district court on August 8, 1988 certified the questions presented for an immediate appeal to this court pursuant to 28 U.S.C. Sec. 1292(b).
 
 
 3
 Defendants did not petition for permission to appeal, however, until August 19, 1988, eleven days after the entry of the order. Myles opposed the petition, arguing it was untimely and unjustified substantively. The court granted permission to appeal on September 22, 1988.
 
 
 4
 We now conclude that, while interesting, consideration of the substantive issues raised by the defendants is foreclosed by their procedural default. The district court certified its ruling on the defendants' jurisdictional claim as an appealable interlocutory order, but the defendants failed to file a petition for permission to appeal within the ten days allotted by the applicable statute. As the ten day requirement is jurisdictional, we are barred from considering the merits of the defendant's claim.
 
 
 5
 Section 1292(b), which authorizes the appeal of a certified interlocutory order, provides:
 
 
 6
 (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such an order, if application is made to it within ten days after the entry of the order. Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.
 
 
 7
 (Emphasis added). Rule 5 of the Federal Rules of Appellate Procedure also specifies that petitions for appeal must be filed within ten days:
 
 
 8
 An appeal from an interlocutory order containing the statement prescribed by 28 U.S.C. Section 1292(b) may be sought by filing a petition for permission to appeal with the clerk of the court of appeals within 10 days after the entry of such order in the district court with proof of service on all other parties to the action in the district court.
 
 
 9
 This court cannot enlarge the time for filing the petition. Fed.R.App.P. 26(b); Nuclear Engineering Co. v. Scott, 660 F.2d 241, 246 (7th Cir.1981), cert. denied, 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982); Braden v. University of Pittsburgh, 552 F.2d 948, 950 (3d Cir.1977).[2]
 
 
 10
 Every court of appeals which has considered the effect of a late filing of a petition to appeal has held that a failure to file within the prescribed ten day period deprives the appellate court of jurisdiction to consider the appeal. See, e.g., Milbert v. Bison Laboratories, Inc., 260 F.2d 431 (3d Cir.1958); Alabama Labor Council, AFL-CIO Public Employees Union, Local No. 1279 v. Alabama, 453 F.2d 922, 925 (5th Cir.1972); Nuclear Engineering Co. v. Scott, supra, 660 F.2d at 241; Hanson v. Hunt Oil Co., 488 F.2d 70 (8th Cir.1973); Hellerstein v. Mr. Steak, Inc., 531 F.2d 470, 471-72 (10th Cir.1976), cert. denied, 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976); General Television Arts, Inc. v. Southern Railway, 725 F.2d 1327, 1330 (11th Cir.1984). The commentators also recognize the rule. See 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice p 205.03 (2d ed. 1988); 16 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3929 (1977). Such a holding is consistent with the general interpretation that Sec. 1292(b) should be used sparingly and thus that its requirements must be strictly construed. See Milbert v. Bison Laboratories, Inc., supra, 260 F.2d 431 (petition was filed 10 days late).
 
 
 11
 Defendants attempt to argue that their untimeliness was due to excusable neglect.[3] There is no provision for waiver, however, in the applicable statute or rule. See Braden v. University of Pittsburgh, supra; Nakhleh v. Chemical Construction Corp., 366 F.Supp. 1221 (S.D.N.Y.1973). Cf. Fed.R.App.P. 4(a).
 
 
 12
 In sum, the defendants' failure to comply with 28 U.S.C. Sec. 1292 and Fed.R.App.P. 5(a) precludes, as of the present time, appellate review of their diversity jurisdiction claim. Accordingly, their appeal is
 
 
 13
 DISMISSED.
 
 
 
 [1]
 The father of Jennifer Michelle Edwards, a potential beneficiary, remained throughout a South Carolina citizen and hence not diverse
 
 
 [2]
 It is not clear, however, whether a district court may in effect enlarge the time for appealing from a certified order by vacating and reentering or amending an order of certification so as arguably to commence the running anew of the 10 day period. Nuclear Engineering Co. v. Scott, supra, 660 F.2d at 246 (citing cases). Indeed, such a course appears more properly within the dual judicial discretion contemplated by the drafters of Sec. 1292(b). See C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure Sec. 3929. Of course, the district court here has not had the opportunity to consider the various factors entering into such a decision: the delay engendered by the defendants' untimeliness (particularly if, as here, proceedings have been stayed pending appeal), prejudice, Braden v. University of Pittsburgh, 552 F.2d 948 (3d Cir.1977), whether counsel's untimeliness was due to excusable neglect, e.g., Woods v. Baltimore & Ohio R.R. Co., 441 F.2d 407, 408 (6th Cir.1971), and the substantive merit of the question presented
 
 
 [3]
 Counsel for the defendants maintain that they deposited the appropriate filing papers with their internal mail room with sufficient alacrity to permit timely service by Federal Express. They insist that any culpability for the late delivery must be ascribed to neglect by the mail room personnel or Federal Express